IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14-20341-CIV-LENARD/WHITE

GEORGE HORN,

    Plaintiff,

v.

MICHAEL CREWS, et al.

    Defendants.

_____/

### DEFENDANT TIMOTHY H. CANNON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO STRIKE

Defendant TIMOTHY H. CANNON, Interim Secretary of the Florida Department of Corrections, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 12, files his Motion to Dismiss Plaintiff's Second Amended Complaint, or in the alternative, his Motion to Strike and in support thereof states as follows:

1. In this action under 42 U.S.C. § 1983, Plaintiff has sued then-Secretary of the Florida Department of Corrections ("FDOC") Michael Crews in his official capacity, Wexford Health Sources, Inc. ("Wexford") and several doctors. Plaintiff alleges that Defendants were deliberately indifferent to a serious medical need, specifically the treatment of his hip.

2. Mr. Crews resigned as Secretary as of November 30, 2014. Defendant Cannon became the Interim Secretary after Mr. Crews' resignation and is automatically substituted as the official-capacity Defendant under Fed. R. Civ. P. 25(d).

3. Plaintiff is an inmate at South Florida Reception Center ("SFRC"). He alleges that although doctors at Kendall Regional Medical Center recommended his artificial hip joint be removed, he had to wait 19 months before that surgery took place. (D.E. 77 at ¶ 11-13.)

1

4. Plaintiff alleges that after the joint was removed, and after two other surgeries on the hip, he was recommended for a fourth surgery in the series to implant a new joint. Id. at ¶ 26.

5. Soon after, Wexford "took over healthcare management and utilization management" from FDOC at numerous Florida prisons, including SFRC. Id. at ¶ 27.

6. Rather than receiving the surgery to implant a new hip joint, Plaintiff alleges two of the Defendant doctors sent him to another surgeon for a second opinion. Id. at ¶ 34. That surgeon allegedly stated he would need an assisting surgeon to perform the operation, which Wexford took to mean it was "unnecessary or impossible." Id. at ¶ 35-36. Plaintiff was denied surgery on that basis. Id.

7. Plaintiff alleges that the Secretary "knows of or encourages the custom of Florida Department of Corrections healthcare employees and the employees of its contractors to deny necessary medical care for inmates' serious medical needs in order to reduce costs and/or increase profits," in deliberate indifference their serious medical needs. (D.E. 77 at ¶ 85.)

8. Plaintiff seeks compensatory and punitive damages from all Defendants except the Secretary, from whom he seeks prospective injunctive relief.

9. Specifically, he seeks an injunction requiring that the Secretary provide him with "all surgery" recommended for his hip and "all necessary pain management," and that FDOC take back control of prison healthcare from Wexford. (D.E. 77 at 15.)

10. The Second Amended Complaint should be dismissed for several reasons. Plaintiff has failed to state a claim for deliberate indifference against the Secretary, and he is barred by separation of powers and the Eleventh Amendment. Dismissal should be with prejudice because further leave to amend would be futile.

11. If the Court does not dismiss the Second Amended Complaint, then in the alternative the Secretary moves to strike Plaintiff's requested relief.

**MEMORANDUM OF LAW**

I.   MOTION TO DISMISS

A. Motion to Dismiss Standard

Fed. R. Civ. P. 8(a) requires a "short and plain statement of the facts" in order to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." While a Complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions … . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts sufficient to state a claim of relief that is plausible on its face. Id. at 547. A claim is facially plausible if the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a "sheer possibility" that a defendant has acted unlawfully. Id. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. Id. Nor will "'naked assertion[s]' devoid of 'further actual enhancement.'" Id. (quoting Twombly at 557).

B. Plaintiff Has Failed to State a Claim

To state a claim under the Eighth Amendment for deliberate indifference, Plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306-1307 (11th Cir. 2009). Deliberate indifference includes an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).

The objective component requires a showing of

> first, an objectively "serious medical need [ ]," one that, if left unattended, "poses a substantial risk of serious harm," and second, that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligence in diagnosis or treatment," or even "medical malpractice."

Id. at 1258 (internal citations and alterations omitted).

The subjective component requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Brozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original).

To hold the Secretary liable under § 1983, Plaintiff may not rely on the doctrine of respondeat superior. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Plaintiff must show either that the Secretary directly participated in the alleged constitutional deprivation, or that some other causal connection exists between the deprivation and the Secretary's alleged acts or omissions. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiff does not allege the Secretary directly participated in the deprivation. If direct participation is not alleged, then causation can be established by showing the deprivation occurred through an official policy, unofficially adopted policy or custom that the Secretary implemented or allowed. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). That is the approach Plaintiff has taken in this case, but it is defective. The allegations against the Secretary do not establish the existence of any such custom beyond the conclusory invocation of the term, nor do they establish causation. Instead, Plaintiff alleges that it was Wexford's actions that actually caused his ongoing injuries.[1]

He alleges that Wexford is paid a flat rate of "$8.242 per inmate, per day, times the average number of inmates, times the number of days in the month, regardless of actual expenditures for necessarily medical care for inmates." (D.E. 88 at ¶ 70.) This flat rate results in Wexford having a

---

[1] Which is not to say that the Secretary believes Wexford or any other Defendant has any liability whatsoever in this action, but on a Motion to Dismiss, he is forced to address the allegations as written.

"clear incentive" to deny medical and surgical care to cut down on expenditures. Id. at ¶ 71, 76-77. To further this cost-cutting, Wexford has implemented a "Collegial Review" program "designed to reduce offsite care costs." Id. at ¶ 74. It is through this Collegial Review program that Plaintiff was denied his hip-replacement surgery. Id. at ¶ 34-36.

Plaintiff attempts to tie those allegations to the Secretary through the cursory and unsupported legal conclusion that he "knows of and condones or encourages" the custom of FDOC employees and contractors to deny care, reduce costs and increase profits. Id. at ¶ 85. In other words, because Wexford has allegedly denied Plaintiff necessary care, it must be an FDOC custom.

This conclusion need not be accepted as true. See Iqbal, 556 U.S. at 663. A claim of deliberate indifference cannot rest on "speculation and conjecture." Self v. Crum, 439 F.3d 1227, 1236 (10th Cir. 2006); Skelton v. Owens, 2012 WL 4100402, at *2 (D.S.C. 2012).

Apart from the unsupported conclusions, all Plaintiff has established is that FDOC privatized healthcare and reduced costs by contracting with Wexford. Privatization is not unconstitutional. Causation is applied with "especial rigor" when the challenged policy itself is not unconstitutional. Schneider v. City of Grand Junction Police Dep't, 717 F.3d 769-70 (10th Cir. 2013). Essentially, Plaintiff is claiming that the Secretary is liable for having contracted with Wexford, which allegedly mismanaged Plaintiff's medical care. Plaintiff acknowledges that FDOC no longer provides his treatment and does not directly supervise it. It is apparent that any ongoing injury giving rise to prospective relief derives from Wexford's alleged acts, not any factually supported FDOC custom.

Plaintiff cannot seek to hold the Secretary liable for the acts of others by simply pronouncing that FDOC has a custom of permitting such acts. A plaintiff "must do something more than simply allege that such an official policy exists." Perez v. Metropolitan Dade County, 2006 WL 4056997, at *1 (S.D. Fla. 2006) (quoting Riebsame v. Prince, 267 F. Supp. 2d 1225, 1233 (M.D. Fla. 2003)).

It is not sufficient for a government agency's policy "to be tangentially related to a constitutional deprivation." Cuesta v. School Bd. of Miami-Dade County, Fla., 285 F.3d 962, 967 (11th Cir. 2002). The policy must have *actually* caused the injury, which Plaintiff has not established here. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). See, e.g. Doe v. Sullivan County, Tenn., 956 F.2d 545, 550 (6th Cir. 1992) (as a matter of law, systematic deficiencies at jail could not be said to have caused the plaintiff's assault).

A plaintiff is required to provide "more than labels and conclusions," and more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Twombly, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)). In civil-rights actions, courts have recognized that "more than mere conclusory notice pleading is required." Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984). A civil-rights complaint will be dismissed "where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

Plaintiff may not circumvent prohibited *respondeat superior* liability under § 1983 by appending the conclusory label of a "custom" and blaming Wexford's alleged actions on the Secretary. Plaintiff's failure to establish causation between the alleged FDOC custom and his injury \ necessitates dismissal of this action.

Plaintiff has also failed to state a claim because he has not shown the Secretary prospectively has authority or responsibility for inmate healthcare. To hold a government entity liable under a policy or custom theory, a plaintiff must show the entity had "authority and responsibility over the government function in issue." Grech v. Clayton County, Ga., 335 F.3d 1326, 1330 (11th Cir. 2003).

Plaintiff has alleged the opposite here: "In late 2013, all correctional healthcare services in the State of Florida were privatized, and **Wexford Health Sources, Inc., took over healthcare**

**management and utilization management duties** for healthcare services in numerous prisons in south Florida, including South Florida Reception Center." (D.E. 77 at ¶ 23) (emphasis added).

Indeed, the subsequent allegations of being denied care are directed toward individual doctors and Wexford, not FDOC. For example: "Wexford refused to provide the ordered brace for the Plaintiff's hip," Id. at ¶ 30, and "Wexford … denied hip surgery to the Plaintiff." Id. at ¶ 36.

Plaintiff himself has conceded that the Secretary no longer controls inmate healthcare at SFRC. In an earlier filing, when he was trying to defeat Wexord's Eleventh Amendment defense, Plaintiff argued:

> The contract between Wexford and the Department of Corrections gives Wexford broad control over how correctional healthcare is managed, administered and dispensed … . … Most importantly, "[t]he Department shall neither have nor exercise any control or direction over the methods by which the Contractor shall perform its work and functions other than as provided herein." **The State therefore does not have control over the way in which Wexford provides healthcare services to inmates.**

(D.E. 51 at 3) (emphasis added). Plaintiff has failed to state a claim because he has not established that the Secretary has responsibility or authority to manage healthcare post-privatization.

In addition, the Secretary's liability for prospective relief relies on him having somehow known that Wexford and its personnel allegedly denied Plaintiff necessary medical care. As Plaintiff acknowledges, his healthcare is currently handled by Wexford and its medical personnel. The Secretary is not a medical professional and is not "obligated to second-guess the medical judgments" of the professionals responsible for Plaintiff's treatment, such as Dr. Riddick, Dr. Ponce de Leon and Dr. Hernandez. Boomer v. Lewis, 541 Fex. Appx. 186, 192 (3rd Cir. 2013). A claim of deliberate indifference cannot rely on that basis. Id. Supervisory officials "are entitled to rely on medical judgments made by medical professionals responsible for prison care." Williams v. Limestone County, Alabama, 198 Fed. Appx. 893, 897 (11th Cir. 2006). On that basis, Plaintiff has failed to state a claim and this action should be dismissed.

Finally, Plaintiff has failed to state a claim because he has alleged no facts describing similar incidents other than his own. A claim of deliberate indifference requires "other incidents involving similar facts." Vasquez v. City of Miami Beach, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012) (citing Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005)). Plaintiff describes his own situation, but "only vaguely identif[ies] a policy of deliberate indifference employed by" FDOC. Santiago v. Bloise, 741 F. Supp. 2d 357, 363 (D. Mass. 2010). Allegations of a single event fail to support a claim of deliberate indifference. Id. See Craig v. Floyd County, Ga., 643 F.3d 1301, 1311 (11th Cir. 2011).[2]

C. Plaintiff's Claims are Barred by Separation of Powers and the Eleventh Amendment

The Second Amended Complaint should be dismissed because Plaintiff's claims are barred by separation of powers and the Eleventh Amendment. Plaintiff acknowledges that Wexford, not FDOC, currently provides healthcare services to inmates at SFRC. But he is nonetheless seeking an injunction ordering the Secretary to provide him with hip-replacement surgery and "all necessary" pain management, and to take back healthcare management from Wexford. (D.E. 77 at 15.) The injunction would require FDOC to violate or terminate its contract with Wexford, assume control of inmate healthcare, second-guess Plaintiff's treating medical professionals, and dictate specific treatment regardless of their medical judgment. This is an impermissible interference in the day-to-day operations of the executive branch.

---

[2] It should be noted that while Plaintiff does allege earlier in the Second Amended Complaint that FDOC "did not obtain surgery to remove the hip prosthetic from Plaintiff's leg until February 2013," this has no bearing on his claim against the Secretary. First, because he did in fact receive that surgery, it is not an ongoing injury and cannot be the subject of a claim for prospective relief. Second, FDOC's alleged deliberate indifference arises not from the earlier joint-removal surgery, but from Wexford's denial of hip-joint replacement surgery. (D.E. 77 at ¶ 83-85). Third, the delay of that earlier surgery is not the same custom forming the basis for prospective relief. Plaintiff alleges the earlier delay was because FDOC "failed to reach an agreement with several hospitals for orthopedic surgery services for inmates due to disagreement over payment procedures." Id. at ¶ 18. Plaintiff has not alleged an FDOC custom of being unable to reach agreements with hospitals. And fourth, Plaintiff would still be describing his own particular situation, not a widespread practice.

A federal court "is ill-equipped to involve itself intimately in the administration of the prison system." Newman v. State of Alabama, 683 F.2d 1312, 1320 (11th Cir. 1982). Running a prison is

> an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separate of powers concerns counsel a policy of judicial restraint.

Turner v. Safley, 482 U.S. 78, 84-85 (1987). See Vaughn v. Kerley, 897 F. Supp. 1413, 1421 (M.D. Fla. 1995) ("Federal courts are normally reluctant to interfere with the matters of internal prison administration."). Whether to privatize healthcare, which company to choose, and the form of that contract are all FDOC "judgment calls … confided to officials outside of the Judicial Branch of Government." Bell v. Wolfish, 441 U.S. 520, 562 (1979).

Plaintiff is asking the Court to terminate a valid executive branch contract. This would interfere with the executive branch's right to contract, as well as its management of day-to-day prison operations such as medical treatment. Separation of powers bars this claim and it should be dismissed.

Last, Plaintiff's claim for injunctive relief is barred, at least in part, by the Eleventh Amendment. Although the Ex Parte Young doctrine allows Plaintiff to seek prospective injunctive relief against the State for an ongoing injury, liability resulting in the expenditure of public funds from the State treasury is barred by the Eleventh Amendment. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 50-51 (1946). Although public funds can be expended to bring a State's actions into compliance with the Constitution, that would not be the case here.

Plaintiff alleges FDOC privatized inmate healthcare through Wexford, and did so to save money—public funds. (D.E. 77 at ¶ 27, 83.) Plaintiff also alleges, albeit in defective, conclusory fashion, that the Secretary knows of and condones an FDOC "custom" of its employees and its contractors' employees denying necessary medical care to cut costs and/or increase profits. Id. at ¶ 85.

9

The relief Plaintiff seeks would not end this alleged custom. Plaintiff seeks an injunction requiring FDOC to provide him with hip-replacement surgery and pain management, and to terminate its contract with Wexford. Given his assertion that both FDOC and contracted employees deny medical care, it would not matter who provides this service—the practice would supposedly continue even under FDOC's direct control. Similarly, even if Plaintiff obtained his desired treatment for himself, the larger practice that gives rise to his claim against FDOC would remain in place.

Plaintiff's claim for injunctive relief is effectively a punitive measure singling out Wexford and demanding its ejection from FDOC business. If privatizing with Wexford saved public funds, then the Court-mandated termination of that contract would require the expenditure of funds. This violates the Eleventh Amendment and necessitates dismissal.

D. <u>Dismissal Should be with Prejudice</u>

A district court "need not allow a plaintiff to amend a complaint if the amendment would not serve to cure the defective pleading." <u>Wittbold v. Miami-Dade County</u>, 2013 WL 3280039, at *6 (S.D. Fla. 2013). Plaintiff has already amended his Complaint twice, including once after dismissal, and there are no facts he could allege that would state a claim as to the Secretary or avoid separation of powers or the Eleventh Amendment. Because Plaintiff cannot cure those defects, amendment would be futile and the action should be dismissed with prejudice. <u>Miccosukee Tribe of Indians of Florida v. Jewel</u>, 2013 WL 7158023, at *5 (S.D. Fla. 2013); <u>Chrystall v. Serden Technologies</u>, 913 F. Supp. 2d 1341, 1362 (S.D. Fla. 2012).

## II.  ALTERNATIVE: MOTION TO STRIKE

If this action is not dismissed, then Defendant alternatively moves to strike Plaintiff's requested relief. Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike under Rule 12(f)

is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Slone v. Judd, 2009 WL 5214984, at *1 (M.D. Fla. 2009) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). A court has broad discretion in considering a motion to strike. Felicia v. Celebrity Cruises, Inc., 2012 WL 6869828, at *1 (S.D. Fla. 2012). A court may grant a motion to strike when the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties." BB In Technology Co., Ltd. v. JAF, LC, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (quoting Scelta v. Delicatessen Support Servs., Inc., 57 Supp. 2d 1327, 1347 (M.D. Fla. 1999)).

A "prayer for relief not available under the applicable law is properly subject to a motion to strike." Hodge v. Orlando Utils. Comm'n, 2009 WL 4042930, at *4 (M.D. Fla. 2009). If the Court determines that Plaintiff's claim itself should not be dismissed, then the requested relief should at least be stricken as unavailable for the reasons discussed above.

WHEREFORE, Defendant TIMOTHY H. CANNON respectfully requests that this Court dismiss Plaintiff's Second Amended Complaint

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either through CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Michael O. Colgan, Esq.
Katzman Garfinkel & Berger
300 North Maitland Avenue
Maitland, Florida 32751
mcolgan@likeyourlawyer.com

M. Katherine Hunter, Esq.
Chimpoulis, Hunter & Lynn, P.A.
7901 SW 36th St. – Suite 206
Davie, FL 33328
khunter@chl-law.com

Respectfully Submitted,

PAMELA JO BONDI
FLORIDA ATTORNEY GENERAL

s/      Shane Weaver
SHANE WEAVER, ESQ.
Assistant Attorney General
Florida Bar No. 907421

Office of the Attorney General
1515 N. Flagler, Suite 900
West Palm Beach, Florida 33401
Tel. (561) 837-5000
Fax. (561) 837-5102
Shane.Weaver@myfloridalegal.com

SERVICE LIST

George Horn v. Michael Crews, et al.
Case No: 14-20341-civ-Lendard/White
United States District Court, Southern District of Florida

**Michael O. Colgan, Esq.**
Katzman Garfinkel & Berger
300 North Maitland Avenue
Maitland, Florida 32751
Attorney for Plaintiff
mcolgan@likeyourlawyer.com
[**VIA CM/ECF**]

**M. Katherine Hunter, Esq.**
Chimpoulis, Hunter & Lynn, P.A.
7901 SW 36th St. – Suite 206
Davie, FL 33328
Attorney for Defendants Reddick, Hernandez, and Wexford, Inc.
khunter@chl-law.com
[**VIA CM/ECF**]