UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20341-CIV-GAYLES/MCALILEY

GEORGE HORN,

          Plaintiff,

vs.

JULIE L. JONES, Secretary of the Florida
Department of Corrections, in her official
capacity, *et al.*

          Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON MOTIONS TO DISMISS

Two of the Defendants in this action, Julie L. Jones, the Secretary of the Florida

Department of Corrections[1], and Seyed Hosseini, M.D., have filed motions to dismiss the

Second Amended Complaint. [DE 86, 87]. The Secretary alternatively moves to strike

from that Complaint a prayer for injunctive relief. [DE 86]. The Honorable Darrin P.

Gayles has referred the Motions to me. [DE 115]. They are fully briefed. [DE 97, 101,

102]. For the reasons offered below, I recommend that both Motions be denied.

### I.    Background

Plaintiff George Horn, a Florida State prison inmate, has brought an action for

deliberate indifference to his serious medical needs, pursuant to 42 U.S.C. § 1983 and the

Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff claims

---

[1] At the time this action was filed Michael Crews was Secretary of the Florida Department of
Corrections and was named, in his official capacity, as a Defendant in this action. [DE 86, ¶ 1].
He has since resigned, and the current Secretary is Julie L. Jones. [*Id.*, ¶ 2; DE 102, pp. 1-2].
Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Jones has been automatically substituted
as a Defendant in this action.

the Defendants denied or delayed providing him with necessary medical treatment to treat serious medical conditions that arose from Plaintiff's failed hip replacement surgery. Plaintiff has sued five Defendants:   (1) the Secretary of the Florida Department of Corrections, (2) Wexford Health Sources, a private company that manages healthcare services in numerous prisons in South Florida pursuant to a contract with the Department of Corrections ("Wexford"), (3) Marlene Hernandez, M.D., medical site director at the South Florida Reception Center, the prison where Plaintiff has been incarcerated, (4) Seyed Hosseini, M.D., the former chief health officer at South Florida Reception Center and (5) David Reddick, M.D., regional medical director for all facilities serviced by Wexford in South Florida.  [DE 77, ¶¶ 2-6, 27].

## A.    Allegations of Delayed and Denied Medical Care[2]

At some time before he was incarcerated, Plaintiff received a total right hip replacement.  *[Id. ¶ 8]*.  In July 2011, while in custody at the South Florida Reception Center, Plaintiff developed an infection and severe abscess at the site of his artificial hip. *[Id., ¶ 9]*.  Plaintiff was admitted to Kendall Regional Medical Center for treatment for approximately six weeks, where his doctors recommended that he have immediate surgery to remove the failed artificial hip.  *[Id., ¶¶ 10-11]*.  Rather than undergo that procedure, Plaintiff was discharged to the South Florida Reception Center where, during

---

[2]   When considering whether to grant a motion to dismiss, the court must assume the facts alleged are true and cast them in the light most favorable to the plaintiff.  *Quality Foods de Centro America v. Latin American Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).

the following seven months, he received oral antibiotics and the abscess was drained on numerous occasions. [*Id.*, ¶¶ 12, 14].

Plaintiff's infection persisted and he was placed in the Center's palliative care unit for the next twelve months, where he received intravenous antibiotics. [*Id.*, ¶¶ 14-15]. During that time Plaintiff suffered extreme pain and muscle and nerve damage from the worsening infection. [*Id.*, ¶¶ 15-16].

While at the Center, Plaintiff often asked Dr. Hosseini whether he would receive the recommended surgery to remove his failed artificial hip. Dr. Hosseini indicated that Plaintiff's surgery had been delayed because the Department of Corrections had not reached an agreement with hospitals for orthopedic surgery services for inmates because of disagreement over payment procedures. [*Id.*, ¶¶ 17, 18]. Plaintiff exhausted all grievance procedures available to him. [*Id.*, ¶ 17].

In February 2013, Plaintiff was sent to Kendall Regional Medical Center to have a new PICC line installed.[3] [*Id.*, ¶ 19]. During his visit, the doctors who recommended -- nineteen months earlier -- that Plaintiff receive immediate surgery to remove his failed artificial hip, encountered him again and learned that the surgery had not taken place. [*Id.*]. The treating physicians made arrangements with the Department of Corrections for Plaintiff to undergo emergency surgery at Kendall Regional, which took place on February 27, 2013. [*Id.*, ¶¶ 20, 21]. Dr. Arturo Corces, an orthopedic surgeon, performed the procedure by removing the artificial hip joint, cleaning the infected areas

---

[3] A PICC line is a peripherally inserted central catheter which can be used to administer medicines over an extended period of time. *See* http://www.webmd.com/pain-management/tc/central-venous-catheters-topic-overview

and placing antibiotic beads to treat the remaining infection. [*Id.*, ¶ 21].  Several weeks later, on March 13, 2013, Plaintiff again underwent surgery; this time Dr. Corces removed the antibiotic beads and inserted a spacer in place of the joint. [*Id.*, ¶ 22]. Plaintiff then returned to the South Florida Reception Center for two months. [*Id.*]. During this time the spacer dislocated, causing Plaintiff severe pain. [*Id.*, ¶ 23]. Plaintiff requested but did not receive medical care for the dislocated hip spacer. [*Id.*].

On May 2013, Dr. Corces again operated on Plaintiff, removing the spacer and cleaning the area of the hip joint. [*Id.*, ¶ 24]. Dr. Corces prepared an operative report the following day, in which he recounted instances while Plaintiff was in custody, when his medical care was delayed or denied:

> [Plaintiff] is status post a previous total hip replacement that has failed secondary to infection.  Unfortunately a large part of the reason . . . for the failure has to do with the fact that this patient prior to his having [seen me] had over a year of drainage.   [Plaintiff] had undergone surgery now three months ago and was told to return to the office approximately one week after surgery.  This patient however for reasons that I do not understand was never return[ed] to the office...[I]n addition even when the patient was seen last week with [m]aterial coming from the hip and the patient was told to immediately go to the hospital[,] the managing company that is tak[ing] care of patient did not send the patient to the hospital. [It] was necessary for me to speak with the medical director who gave no reason as to why this patient was being treated in this fashion.

[*Id.* ¶ 25].  Also following this third surgery, Dr. Corces recommended that Plaintiff receive an abductor brace to immobilize his hip and prevent damage and pain while he was without a hip joint. [*Id.*, ¶ 29].  Plaintiff did not receive the recommended brace, which caused Plaintiff additional pain. [*Id.*, ¶¶ 30, 31].

4

Dr. Corces also recommended that Plaintiff have a fourth surgery to implant a new prosthetic hip, which was scheduled for October 2013. [*Id.*, ¶ 26]. This surgery has not been performed because the Department of Corrections and Wexford have refused to pay for this or any other surgery. [*Id.*]. Plaintiff filed grievances regarding the denial of this fourth surgery. [*Id.*, ¶ 33]. His grievance was approved on September 3, 2013, and "an orthopedic consult was approved by the utilization management structure" and "was approved for surgery, pending the authorization code and eventually scheduling time. . . ." [*Id.* ¶ 34].

After this approval Dr. Hosseini and Dr. Reddick sent Plaintiff to another orthopedic surgeon for a second opinion for the sole purpose of cost containment. [*Id.*]. The consulting orthopedic surgeon, Dr. Jose Ponce De Leon, stated that he could not continue a course of surgery, where another surgeon had already done work, without an assisting surgeon. [*Id.*, ¶ 35]. Wexford treated Dr. Ponce De Leon's opinion as a statement that the fourth surgery was unnecessary or impossible, and denied Plaintiff surgery to implant a new prosthetic hip. [*Id.*, ¶ 36]. Plaintiff has repeatedly tried to obtain this final surgery, but it has been refused. [*Id.* ¶ 37].

Plaintiff alleges that Wexford has a policy or custom of directing or incentivizing its healthcare employees to deny non-emergency surgical care in order to reduce costs and maximize its profitability. [*Id.*, ¶¶ 76-77]. Plaintiff alleges that the Department of Corrections contracted with Wexford, with the knowledge that Wexford's cost cutting measures had resulted in an unacceptable decline in the quality of medical care provided prisoners. [*Id.*, ¶ 84]. Plaintiff cites an August 2004 report by the Florida Legislature's

Office of Program Policy Analysis and Government Accountability that reviewed Wexford's performance under an earlier contract between it and the Department of Corrections. [*Id.*, ¶ 75]. The report found that "[a] primary way Wexford contains costs is through tight utilization management" and found that "the quality of Wexford's health care has been problematic." [*Id.*]. The report stated that several correctional facilities Wexford serviced, including the South Florida Reception Center, "often have shown repeated deficiencies and a deteriorated level of service to the extent that the clinical quality of care required immediate corrective action by the contractor." [*Id.*]. The report specifically identified "postponement of specialty clinical visits" as an issue of concern. [*Id.*].

Since Plaintiff's third surgery in May 2013, he has no hip joint and no spacer in the joint, causing his femur to move independently of his hip. [*Id.*, ¶ 28]. As a result, Plaintiff's leg is immobile, and any movement of his thigh causes him intense pain. [*Id.*]. Nurses at the South Florida Reception Center administered liquid morphine to Plaintiff over a two year period beginning in late 2011. [*Id.*, ¶ 38]. On January 7, 2014, Dr. Hernandez abruptly discontinued the morphine, and refused to provide alternative treatment for Plaintiff's pain, claiming that morphine pills had been found as contraband in another inmate's possession. [*Id.*, ¶ 39].

**B.    The Pending Motions**

Ms. Jones, Secretary of the Florida Department of Corrections, and Dr. Hosseini move to dismiss the Second Amended Complaint under Rule 12 (b) (6), F.R. Civ. P., arguing that Plaintiff failed to state a claim for relief. [DE 86, 87]. Both Defendants

6

contend that Plaintiff has not alleged sufficient facts to state a claim for deliberate indifference. [DE 86, pp. 3-8; DE 87, pp. 3-8]. They also make other arguments in favor of dismissal: the Secretary argues that Plaintiff's claims are barred by separation of powers and the Eleventh Amendment, and Dr. Hosseini argues that he is entitled to qualified immunity. [DE 86, pp. 8-10; DE 87, pp. 8-10]. The Secretary alternatively moves to strike, under Rule 12 (f), a demand for injunctive relief. I address each motion in turn.

## II.   Analysis

### A.   Standard

To survive a motion to dismiss, a plaintiff must plead facts that make out a claim that is plausible on its face and which raises the right to relief beyond a speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-7 (2007). This standard requires the pleader to do more than recite elements of a cause of action or state legal conclusions. *Id.* at 555. Rather, the pleader must set forth a short and plain statement that provides the defendant with fair notice of the nature of the claim. Fed.R.Civ.P. 8(a); *Dura Pharm, Inc. v. Broudo,* 544 U.S. 336, 346-7 (2005). At this early stage in the proceedings the Court must assume the Plaintiff's allegations are true and consider them in the light most favorable to the Plaintiff. *Quality Foods de Centro America*, 711 F.2d at 994-95.

Plaintiff brings his claims pursuant to the Eighth and Fourteenth Amendments to the Constitution, and 42 U.S.C. § 1983. [DE 77, p. 1]. The Eighth Amendment prohibits cruel and unusual punishment, and it is made applicable to the states by the Fourteenth Amendment. *Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 181 (11th Cir. 2012)

(citation omitted). It is well established that a prison staff's deliberate indifference to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment. *Id.* The prisoner can sue those prison staffers who violated his Eighth Amendment rights, and the municipality that runs the prison system, under 42 U.S.C. § 1983. *Id.*

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege: (1) his serious medical need; (2) Defendants' deliberate indifference to that need; and (3) causation between that indifference and Plaintiff's injury. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). Here, there is no dispute that Plaintiff alleged he had a serious medical need while in custody; thus Plaintiff's pleading of that element is not in question.

To plead the second element, deliberate indifference, Plaintiff must sufficiently allege: (1) Defendants' subjective knowledge of a risk of serious harm to Plaintiff; (2) Defendants' disregard of that risk; (3) and that Defendants' conduct amounted to more than gross negligence. *Id.*, at 1307; *Alsobrook v. Alvarado*, 477 Fed. Appx. 710, 712 (11th Cir. 2012).

The level of proof required for the causation element has been described in varying, although not dissimilar, ways. The Eleventh Circuit addressed the pleading requirement of an inmate's claim of deliberate indifference to the conditions-of-confinement, noting that "causation may be found where an official was in a position to have taken steps that could have averted an unconstitutional condition, but failed to do so." *Spires v. Paul*, 581 Fed. Appx. 786, 793 (11th Cir. 2014), citing *LaMarca v. Turner*,

995 F.2d 1526, 1539 (11ᵗʰ Cir. 1993).  The Court noted that the plaintiff must show that the "official's acts or omissions were the cause – not merely a contributing factor – of the constitutionally infirm condition." *Id.* (quoting *LaMarca*, 995 F.2d at 1538).

A sister court in this Circuit addressed the pleading requirements of the causation element in a section 1983 deliberate indifference claim, noting "[i]n a §1983 claim, a government official's failure to act must have been a substantial factor leading to the violation of a constitutionally protected liberty or property interest." *Ray v. E.FJ. Foltz*, 354 F. Supp. 2d 1309, 1316 (M.D. Fla. 2005) (citation and quotation marks omitted).

In another case the Eleventh Circuit had before it an appeal of a district court's grant of summary judgment in favor of a prison director of nursing, who an inmate sued under section 1983 charging that her deliberate indifference to the inmate's serious medical needs caused him injury.  There, the Eleventh Circuit noted: "to survive summary judgment, a plaintiff must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citation omitted).

Another division of this Court had before it a motion to dismiss an inmate's claim of deliberate indifference to his serious medical need.  That Court noted that proof of the second element of deliberate indifference (that the defendant disregarded the plaintiff's serious medical need) "overlaps" with the causation element, so that "[t]he question [becomes] whether the delay worsened the plaintiff's condition." *Dittmer v. Bradshaw*, No. 12-81309-CV, 2015 WL 471371, at *5 (S.D. Fla. Feb. 4, 2015) citing *McDaniels, supra*, and *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11ᵗʰ Cir. 2007).  The Court need

not settle, at this moment, on the exact measure of the proof required of the causation element, as Plaintiff has adequately plead this element applying the language of any of the foregoing decisions.

With these principles in mind, I consider Defendants' arguments for dismissal.

**B.     Dr. Hosseini's Motion to Dismiss**

1.     Plaintiff Has Stated A Claim

Plaintiff alleges that Dr. Hosseini knew of Plaintiff's serious medical needs and had the authority to address those needs but failed to do so, causing Plaintiff to suffer severe pain, nerve and muscle damage, long term inability to walk and other physical injury.  [DE 77, ¶¶ 42-46].  Dr. Hosseini contends Plaintiff has failed to state a claim because his allegations show that Plaintiff received at least minimally adequate treatment during the nineteen months he waited for his hip removal surgery.  [DE 87, p. 5]. Whether Plaintiff, in fact, received adequate treatment at the South Florida Reception Center is a question of fact that cannot be resolved on a motion to dismiss.

The Second Amended Complaint is not a model of clarity, but when read as a whole I believe it states a claim against Dr. Hosseini.  Its allegations include the following:  (i) Dr. Hosseini knew that Plaintiff's doctors recommended immediate surgery to remove his failed artificial hip, (ii) Dr. Hosseini knew that Plaintiff was suffering from a severe infection and abscess because of his failed hip joint and these conditions were likely to worsen if the artificial hip was not removed or its removal was delayed, (iii) the nineteen month delay before Plaintiff received that surgery exacerbated his condition because his infection worsened and he suffered extreme pain and muscle

10

and nerve tissue damage, and (iv) the delay was medically unjustified because it resulted from disagreement over payment. [DE 77, ¶¶ 11, 15-16, 18, 42]. These allegations, when construed in a light most favorable to Plaintiff, support each of the elements set out above and state a plausible claim of deliberate indifference by Dr. Hosseini to Plaintiff's serious medical need.[4]

Dr. Hosseini also argues that his actions in sending Plaintiff for a second opinion do not state a claim for deliberate indifference because second opinions "are routine issues of medical judgment." [DE 87, p. 7]. Plaintiff, however, alleges that the only reason Dr. Hosseini sent Plaintiff for a second opinion was to contain costs. [DE 77, ¶ 34]. Saving money is not a medical justification to delay treatment. *Fields*, 490 Fed. Appx. at 184-85. Plaintiff's allegations that necessary medical care was delayed or denied because of non-medical reasons such as cost containment are sufficient to survive a motion to dismiss. *Kruger v. Jenne*, 164 F.Supp.2d 1330, 1336 (S.D. Fla. 2000) (inmate stated § 1983 claim when she alleged medical provider denied recommended treatment based on cost cutting policy).

Lastly, Dr. Hosseini argues that Plaintiff has not sufficiently alleged causation because the nineteen month delay in Plaintiff's hip removal surgery was the result of

---

[4] As noted, Plaintiff must establish that the Defendants' conduct rose to a level greater than gross negligence. For a delay of medical care, that is established where "it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem and the delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (quotation marks and citation omitted). Plaintiff's allegations against Dr. Hosseini, if proven true, plausibly support a finding that Dr. Hosseini's conduct was something more than gross negligence.

"contractual reasons at the state level," not any actions of Dr. Hosseini, and Dr. Hosseini is not alleged to have had any control over the doctor who issued the second opinion. [DE 87, pp. 5, 7]. These arguments overlook Plaintiff's allegation that Dr. Hosseini had the authority to address Plaintiff's serious medical needs but failed to do so and understood the need for the delayed and denied medical care, and that this led to Plaintiff's injury and suffering. [DE 77, ¶ 46]. Similar allegations have satisfied the causation element for purposes of a motion to dismiss. *See e.g., Brown v. McGowan*, No. 3:13cv545/RV/EMT, 2014 WL 4538056, at *5 (N.D. Fla. Sept. 11, 2014) (allegations that Defendants knew of Plaintiff's diagnosis and treatment, and knew of his worsening condition yet failed to evaluate or treat him despite their authority to do so, are sufficient to state an Eighth Amendment claim). Discovery will likely reveal the extent of Dr. Hosseini's authority and whether he was responsible for any delay or denial of Plaintiff's necessary medical care. At this stage the Court must take Plaintiff's allegations as true, and I conclude that those allegations state a plausible claim under § 1983 for a violation of Plaintiff's Eighth Amendment rights.

2.    Qualified Immunity

Dr. Hosseini argues that dismissal is proper because he is entitled to qualified immunity. [DE 87, pp. 8-10]. The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks and citation omitted). "The purpose of this immunity is to

12

allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." *Id.* at 1194. Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment. *Brown*, 2014 WL 4538056 at *6 (citation omitted).[5]

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To receive qualified immunity, Dr. Hosseini must first establish that he was acting within his discretionary authority during the events in question. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Plaintiff does not dispute that Dr. Hosseini was acting within his discretionary authority. [DE 97, pp. 15]. The burden then shifts to Plaintiff to show that Dr. Hosseini is not entitled to qualified immunity. *Id.* at 1358. To do so, Plaintiff must satisfy the two-pronged qualified immunity standard: (1) the complaint must allege facts that amount to a violation of his constitutional rights, and (2) the constitutional rights must have been "clearly established" at the time of the alleged misconduct. *Id.* at 232. As explained in the prior subsection, Plaintiff has alleged conduct by Dr. Hosseini that, if

---

[5] *See also*, *Marshall v. Florida Dept. of Corrections*, No. 10-20101-cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.*") (emphasis in original; citation omitted).

proven true, plausibly establish a violation of Plaintiff's Eighth Amendment rights; the first prong is therefore satisfied.

As for the second prong (whether Plaintiff's constitutional rights were clearly established) "the relevant, dispositive inquiry … is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Brown*, 2014 WL 4538056 at *6 (quotation marks and citation omitted). While Plaintiff makes a host of allegations, his central claim is that Defendants denied, or greatly delayed, providing Plaintiff surgery he needed to treat his undisputed serious medical need, and that Defendants did so only to save money. [DE 77, ¶¶ 13, 18, 23, 45, 46]. Delaying treatment for serious and painful injuries has been "clearly recognized as rising to the level of a constitutional claim." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994) (citations omitted). For the law to be clearly established, though, precedent must give fair notice of the amount of time that constitutes actionable delay. *Id.* at 393. "The tolerable length of the delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Id.* at 393-94.

Medical conditions necessarily vary among individuals, including the severity of the condition and the prescribed course of treatment. No two cases of inmates claiming deliberate indifference by prison officials to their serious medical needs will present the same facts. The doctrine of qualified immunity does not demand this. "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts

14

violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

The Eleventh Circuit has issued a number of decisions before the events in question that declare that prison officials who substantially delay or deny inmates necessary medical care for nonmedical reasons such as cost savings can violate the inmate's Eighth Amendment rights. *See Farrow v. West*, 320 F.3d 1235, 1246-47 (11th Cir. 2003) (fifteen month delay in providing prisoner needed dentures, which caused him pain, bleeding and swollen gums and weight loss, raised jury question whether doctor was deliberately indifferent towards prisoner's serious medical need); *Fields*, 490 Fed. Appx. at 185 ("cost is not a factor which can justify the lack of timely medical treatment for [a serious medical need].") (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care or treatment of inmates.")); *Harris*, 21 F.3d at 394 ("Under the clearly established legal norms, a reasonable sheriff would have known that delaying prescribed treatment for a serious medical need for several weeks for a nonmedical reason may violate an inmate's constitutional rights.").

Taking Plaintiff's allegations as true, I am unable to conclude at this motion to dismiss stage that Dr. Hosseini is entitled to qualified immunity. I therefore recommend that the Court deny Dr. Hosseini's motion to dismiss.

In sum, I conclude that Plaintiff allegations are sufficient to state a claim against Dr. Hosseini under § 1983 and the Eighth Amendment, and on this record the Second Amended Complaint should not be dismissed based on qualified immunity.

15

### C.   Motion to Dismiss By the Florida Department of Corrections

#### 1.   Plaintiff Has Stated A Claim

Plaintiff alleges that the Florida Department of Corrections ("FDOC") has a policy of outsourcing its healthcare responsibilities to private contractors to save money on inmate healthcare costs.  [DE 77, ¶ 83].  Pursuant to this policy, FDOC entered into a contract with Wexford knowing that Wexford had a policy or custom of directing or incentivizing its healthcare employees to deny non-emergency surgical care in order to contain costs and maximize its profitability, which caused an unacceptable decline in the quality of medical care provided to prisoners.  [*Id.*, ¶¶ 76, 77, 84].  Plaintiff also alleges that the Secretary of FDOC "knows of and condones or encourages the custom of the Florida Department of Corrections healthcare employees and the employees of its contractors to deny necessary medical care for inmates' serious medical needs in order to reduce costs and/or increase profits in deliberate indifference to the serious medical needs of inmates."  [*Id*, ¶ 85].  Plaintiff asserts that these policies and customs of FDOC were the driving force behind the deliberate indifference of the physicians who delayed or denied providing Plaintiff with necessary medical treatment, which caused Plaintiff severe pain, nerve and muscle damage, long term inability to walk and other physical injury.  [*Id*, ¶¶ 86, 87].

To hold the Secretary liable under § 1983, Plaintiff must show that the FDOC had a custom or policy which was "the moving force [behind] the constitutional violation." *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995).  "An action does not need to be official in nature in order to constitute a … policy or custom." *Vasquez v. City*

*of Miami Beach*, 895 F.Supp.2d 1275, 1277 (S.D. Fla. 2012) (citation omitted). "The Eleventh Circuit recognizes that a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* at 1278 (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)) (quotation marks omitted). Plaintiff alleges such a longstanding and widespread practice of FDOC.

In particular, Plaintiff alleges that the Florida Legislature's Office of Program Policy Analysis and Government Accountability issued a report in 2004 about Wexford's performance during a previous contract with FDOC. [DE 77, ¶ 75]. The report found that "[a] primary way Wexford contains costs is through tight utilization management" and found that "the quality of Wexford's health care has been problematic." [*Id.*]. The report further states that several correctional facilities Wexford serviced, including the South Florida Reception Center where Plaintiff has been incarcerated, "often have shown repeated deficiencies and a deteriorated level of service to the extent that the clinical quality of care required immediate corrective action by the contractor." [*Id.*]. The report identified "postponement of specialty clinical visits" as an issue of concern. [*Id.*].

The Secretary argues that Plaintiff makes only conclusory allegations of an FDOC custom or policy that caused the deprivation of his constitutional rights, and that Plaintiff has not alleged similar incidents other than his own. [DE 86, pp. 4-6, 8]. I disagree. Plaintiff alleges that FDOC knows of or encourages the custom of its own employees and its contractor's employees to deny medical care to inmates in order to reduce costs, and supports these assertions with detailed allegations of the 2004 legislative report. [DE 77,

¶¶ 75, 84-86].   It is true that "a pattern of similar constitutional violations is ordinarily necessary" to impose liability on FDOC and that "[p]roof of a single incident of unconstitutional activity" is insufficient.   *Craig v. Floyd County Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).   However, the 2004 legislative report does not refer to an isolated incident; it refers to "repeated deficiencies" which required "immediate corrective action" for issues such as "postponement of specialty clinical visits" – the type of insufficient medical care that Plaintiff alleges he received.   [DE 77, ¶ 75].

The Secretary also asserts that this report is too remote in time to reflect an FDOC policy in effect when Plaintiff was injured.   [DE 102, p. 4].   Although the report was issued seven years before the events in question, it refers to similar conduct at issue here. The gap in time may be important at summary judgment depending upon the other evidence that Plaintiff offers, but the report is sufficient at this stage to *plausibly* establish a pattern of violations.

The Secretary also argues that Plaintiff has not alleged that an FDOC policy or custom actually caused his injury.   [DE 86, p. 4-6].   Again I disagree.   Plaintiff alleges that FDOC's customs and policies "were the driving force" behind the deprivations of his constitutional rights, which caused Plaintiff to suffer severe pain and physical injuries. [DE 77, ¶¶ 86-87].   It is plausible that the delays and denial of care alleged in the Second Amended Complaint resulted from FDOC's knowing failure to insure that inmates were provided needed medical treatment, and did so to reduce costs.

Other courts have found similar allegations sufficient to state a claim, and I reach the same conclusion here.   *Elliott ex rel. Listau v. Madison County, Ala.*, No. 5:14-cv-

1309-CLS, 2015 WL 1013202, at *17 (N.D. Ala. March 9, 2015) (allegations that plaintiff's death resulted, in part, from county's retention of contractor despite knowledge of contractor's unconstitutional practices, and county's knowledge that contractor was incentivized to deny inmates outside medical care to increase profits, sufficient to state § 1983 claim); *Sams v. Prison Health Services, Inc.*, No. 8:06-cv-862-T-24 MAP, 2007 WL 788365, at *4 (M.D. Fla. March 14, 2007) (plaintiff stated § 1983 claim where "it can be inferred from the second amended complaint that the County had notice of the problems with delivery of medical care to pretrial detainees ... and that these problems ... contributed to [plaintiff's] death."); *Kruger*, 164 F.Supp.2d at 1340 (denying motion to dismiss § 1983 claim where plaintiff alleged defendant's cost savings policy caused plaintiff to suffer prolonged pain and worsened his conditions).

Finally, the Secretary asserts that dismissal is warranted because Plaintiff has not shown that the Secretary had authority or responsibility for inmate healthcare once Wexford took over correctional healthcare services.  [DE 86, pp. 6-7].  This argument is unpersuasive.  The obligation of state and local governments to provide medical care to prisoners is a non-delegable duty that cannot be absolved by contracting with a private entity. *Ancata*, 769 F.2d at 705.

For these reasons, I recommend that the Secretary's Motion to Dismiss pursuant to Rule 12(b) (6) be denied.

2.      Plaintiff's Claims Are Not Barred By The Eleventh Amendment

Citing one case that does not stand for the proposition for which it is cited,[6] the Secretary contends that the Complaint should be dismissed because the requested injunctive relief, if granted, would violate the Eleventh Amendment to the U.S. Constitution.

The Third Amended Complaint asks the Court to enter the following injunctions against the Secretary:

> a.  An injunction directing the Secretary of the Florida Department of Corrections to take all necessary action to ensure that the Plaintiff receives all surgery recommended for the Plaintiff's right hip revision, identified as a serious medical need by Dr. Arturo Corces, and all recommended necessary medical care to complete hip revision and recover from that surgery;
>
> b.  An injunction directing the Secretary of the Florida Department of Corrections to take all necessary action to ensure that the Plaintiff receives all necessary pain management services for pain associated with his hip revision and infections and other associated injuries;
>
> c.  An injunction directing the Secretary of the Florida Department of Corrections to reassume direct supervision and control of healthcare operations at its facilities from Wexford Health Sources, Inc.

[DE 77, p. 15].

Although the Secretary contends that each of these injunctions would be improper [*see*, DE 86, p. 8] it appears that the Secretary's Eleventh Amendment argument is confined to the final request for relief – that the Secretary be ordered to cease delegating

---

[6] *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 50-51 (1946).  The Secretary incorrectly cites that case, at pages 50 and 51, for the proposition that "liability resulting in the expenditure of public funds from the State treasury is barred by the Eleventh Amendment."  [DE 86, p. 9].

to Wexford the provision of health care services to Florida inmates, and to assume direct control of inmate medical care. The Secretary argues that if entered, this injunction would require the FDOC to expend more money on health care services for inmates than it is spending now, and that such an order would violate the Eleventh Amendment. [*See id.* at 9-10].

The Secretary's argument is undeveloped and appears at odds with binding precedent. The Eleventh Amendment[7] immunizes state officials sued in their official capacity for money damages. *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). It does not, however, protect state officials from claims for prospective declaratory or injunctive relief to end continuing violations of federal law. *Florida Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehabilitative Serv.*, 225 F.3d 1208, 1219-20 (11th Cir. 2000).

It is clear that Plaintiff does not seek money damages from the Secretary, and his requested injunction is prospective in nature, as it would require the Secretary, going forward, to reassume direct control of inmate healthcare. It is also clear that states are obligated "to provide adequate medical care to those whom it has incarcerated," *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995), and that courts can order states to meet that Constitutional obligation, even if this would require state expenditure of funds. *Papasan v. Allain*, 478 U.S. 265, 278 (1986). The Secretary has not provided legal analysis or

---

[7] The Eleventh Amendment states: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

authority to demonstrate how entry of the final requested injunction would violate the Eleventh Amendment and her motion to dismiss the Second Amended Complaint on this ground should be denied.

### 3. The Doctrine of Separation of Powers Does Not Require the Court to Dismiss the Complaint or Strike the Prayers for Injunctive Relief

The Secretary also argues that, although it is not expressly stated, the final prayer for injunctive relief would require the FDOC to terminate its contract with Wexford, and that such an order would constitute impermissible judicial interference in the day-to-day operations of the executive branch in violation of the principle of separation of powers. [DE 86, p. 8-9]. The Secretary asks that the Complaint be dismissed for this reason, or alternatively moves under Rule 12(f) for the Court to strike this claim for relief. [*Id.*, pp. 10-11].

Plaintiff responds to the Secretary's separation of powers argument with the dubious contention that the Secretary could comply with the requested injunction without terminating the FDOC-Wexford contract because "Wexford provides numerous services for the Department of Corrections under its contract …" other than healthcare management. [DE 97, p. 8]. Notably, Plaintiff's Complaint says nothing of Wexford providing non-healthcare related services.[8] From what is pled in the Complaint it would

---

[8] According to the Complaint, Wexford "took over healthcare management and utilization management duties for healthcare services in numerous prisons in South Florida, including South Florida Reception Center" and is a "for-profit corporation engaged in providing healthcare personnel and management services for Florida Department of Corrections facilities." [DE 77, ¶¶ 27, 68].

appear that the requested injunction would require the FDOC to terminate, or modify, its contract with Wexford.

The Secretary may be right that the requested relief would go beyond what might be needed to remedy the FDOC's Eighth Amendment violation, if this Court were to find such violation. Federal appellate courts have warned that trial courts must tread carefully when fashioning a remedy for a state's failure to operate its prison system consistent with Constitutional mandates. The Supreme Court has written:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*,[9] additional reason to accord deference to the appropriate prison authorities.

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987). This has been identified as a "policy of minimum intrusion into the affairs of state prison administration" by federal courts. *Newman v. State of Alabama*, 683 F.2d 1312, 1320-21 (11th Cir. 1982) (citations omitted).[10]

The Secretary asks the Court to dismiss all claims against her simply because the prayer for relief may be excessive. Certainly, the presence in the Complaint of this

---

[9] *Procunier v. Martinez*, 416 U.S. 396 (1974).

[10] In *Newman*, the Court of Appeals reversed a District Court's order that the Alabama Department of Corrections release from custody several hundred prisoners, selected by the Court, as a means of reducing unconstitutional overcrowding in the Alabama prison system. The Court of Appeals noted that permanent injunctive relief from a constitutional violation "must be no broader than necessary to remedy the constitutional violation." *Id*. at 1319. It found that the trial court's order "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary to remedy the constitutional violation." *Id*. at 1320

requested remedy does not undermine the finding that Plaintiff has otherwise stated a claim for relief against the Secretary. The Secretary has provided no authority that the Court should dismiss the Complaint for this reason, and I recommend that the motion to dismiss on this ground be denied.

The Secretary has also failed to meet her heavy burden to show that it is proper under Rule 12 (f) to strike this proposed remedy now. A motion to strike seeks a "drastic remedy . . . disfavored by the courts." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citations omitted). Motions to strike are "denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Kenneth F. Hackett & Associates, Inc., v. GE Capital Information Tech.*, 744 F.Supp.2d 1305, 1309 (S.D. Fla. 2010) (citations omitted). Here, the disputed prayer for injunctive relief has a logical connection to the allegations of the Complaint. And the Secretary has not shown how she will be prejudiced to have this demand remain in the Complaint.[11]

In sum, the Court cannot conclude with certainty at this stage of the proceeding that this prayer for relief would be unavailable as a matter of law. Whether it might be appropriate will depend on the proof presented and the Court's legal conclusions. It

---

[11] Courts have held that a prayer for relief (often for punitive damages) that plainly is unavailable under the applicable law may properly be subject to a motion to strike under Rule 12 (f). *See e.g. Schmidt v. Bard, Inc.*, Case No. 6:14-cv-62, 2014 WL 5149175 *7 (S.D. Ga. Oct. 14, 2014); *Parsons v. Okaloosa Cnty. School Dist.*, Case No. 3:09cv254/WS/EMT, 2010 WL 1753152 (N.D. Fla. March 30, 2010); *Hodge v. Orlando Utilities Commission*, Case No. 6:09-cv-1059-Orl, 2009 WL 4042930 *4 (M.D. Fla. Nov. 23, 2009). This Court does not have before it such a clear cut situation.

would be premature to conclude that it must be struck from the Complaint.  I therefore recommend that that the Court deny the motion to dismiss or strike Plaintiff's prayers for injunctive relief.

## III.   Recommendation

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Secretary's Motion to Dismiss Second Amended Complaint or in the Alternative, Motion to Strike [DE 86], be **DENIED**, and Dr. Hosseini's Motion to Dismiss Second Amended Complaint [DE 87], be **DENIED**.

## IV.   Objections

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report and Recommendation with the Honorable Darrin P. Gayles within **14 days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. See *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULY RECOMMENDED in chambers at Miami, Florida, this 8th day of May, 2015.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Darrin P. Gayles
     All counsel of record