**In the Matter of:**

GEORGE HORN

vs.

MICHAEL CREWS

---

**MARLENE HERNANDEZ, M.D.**

*July 15, 2015*

---



Case 1:14-cv-20341-DPG   Document 149-1   Entered on FLSD Docket 08/15/2016   Page 2 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    1

1          IN THE UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
2                   MIAMI DIVISION

3         CASE NO. 14-20341-CIV-LENARD/WHITE

4
   GEORGE HORN,
5
                        Plaintiff,
6  vs.

7  MICHAEL CREWS, Secretary of
   the Florida Department of
8  Corrections, in his official
   capacity; WEXFORD HEALTH
9  SOURCES, INC.,  a Florida
   corporation; MARLENE
10 HERNANDEZ, M.D.; SEYED
   HOSSEINI, M.D.; DAVID REDDICK,
11 M.D.;,

12                      Defendants.

13 _____/

14 DEPOSITION OF:   MARLENE HERNANDEZ, M.D.

15
   DATE:            JULY 15, 2015
16
   TIME:            2:33 P.M. - 3:18 P.M.
17
   TAKEN BY:        DEFENDANTS
18
   PLACE:           CHIMPOULIS, HUNTER & LYNN
19                  150 S. PINE ISLAND RD., #510
                    PLANTATION, FLORIDA 33324
20
   REPORTED BY:     EDWARD F. KIDD, RPR, LCR
21                  Notary Public, State of Florida

22 _____

23

24

25



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    2

```
 1   A P P E A R A N C E S :

 2

 3   Appearing on behalf of the Plaintiff:

 4

 5   MICHAEL COLGAN, ESQUIRE
     OF:     KATZMAN GARFINKEL
 6           300 North Maitland Avenue
             Maitland, Florida 32751
 7           (407)539-3900
             MCOLGAN@LIKEYOURLAWYER.COM
 8           (Appearing via telephone)

 9

10   Appearing on behalf of the Defendants:

11

12   M. KATHERINE HUNTER, ESQUIRE and
     ERIC D. FREEDMAN, ESQUIRE
13   OF:     CHIMPOULIS, HUNTER & LYNN, P.A.
             150 South Pine Island Road
14           Suite 510
             Plantation, Florida 33324
15           (954)463-0033
             EFREEDMAN@CHL-LAW.COM
16

17
     Appearing on behalf of the Defendant Department
18   of Corrections:

19

20   SHANE WEAVER, ESQUIRE
     OF:     OFFICES OF THE ATTORNEY GENERAL
21           1515 North Flagler Drive
             Suite 900
22           West Palm Beach, Florida 33401
             (561)837-5000
23           SHANE.WEAVER@MYFLORIDALEGAL.COM

24

25
```



**Orange Legal**
**800-275-7991**

Case 1:14-cv-20341-DPG   Document 149-1   Entered on FLSD Docket 08/15/2016   Page 4 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    3

```
 1                     I N D E X          Page

 2

 3    WITNESS: MARLENE HERNANDEZ

 4    Direct Examination By Mr. Colgan ...........5
      Cross-Examination By Mr. Weaver ...........33
 5    Cross-Examination By Ms. Hunter ...........35

 6    CERTIFICATE OF OATH ......................39

 7    CERTIFICATE OF REPORTER ..................40

 8    ERRATA PAGE ..............................41

 9    READ AND SIGN LETTER .....................42

10

11                     E X H I B I T S

12

13    EXHIBIT          DESCRIPTION              PAGE

14

15    Plf Exh A     DOC Chronological Record     15
                    of Healthcare
16

17

18

19

20

21

22

23

24

25
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                                            4

```
 1
 2                          *  *  *  *  *  *
 3                  S T I P U L A T I O N S
 4           It is hereby stipulated and agreed by
 5   and between counsel present for the respective
 6   parties, and the deponent, that the reading and
 7   signing of the deposition are hereby reserved.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    5

```
 1              THE REPORTER:  Would you raise your

 2        right hand, please?

 3              THE WITNESS:  (Witness complies.)

 4              THE REPORTER:  Do you solemnly swear

 5        the testimony you're about to give will be

 6        the truth, the whole truth and nothing but

 7        the truth so help you God?

 8              THE WITNESS:  I do.

 9   THEREUPON,

10              MARLENE HERNANDEZ, M.D.,

11   called as a witness, and after having been first

12   duly sworn, testified as follows:

13              DIRECT EXAMINATION

14   BY MR. COLGAN:

15        Q.   Good afternoon.  My name is Mike

16   Colgan.  I'm an attorney representing the

17   plaintiff, George Horn, in a case where you have

18   been named as a defendant.  Have you ever had

19   your deposition taken before?

20        A.   No, sir.

21        Q.   Okay.  I'll explain some basic rules.

22   This is similar to testifying in court in that

23   your answers are under oath.  You are to answer

24   the questions that I put to you.  There are some

25   differences, though.  First, there may be some
```



Case 1:14-cv-20341-DPG  Document 149-1  Entered on FLSD Docket 08/15/2016  Page 7 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    6

```
 1   objections by your attorney or by another

 2   attorney.  Unless you're specifically instructed

 3   not to answer the question, please answer the

 4   question and we'll sort out any objections later

 5   on.  If you don't understand a question that I

 6   ask, you may ask me to rephrase it or explain

 7   what you don't understand about it.  Otherwise,

 8   if you answer the question, I'm going to assume

 9   you understood what I'm asking.

10           If you want to take a break at any

11   time, stretch, get water, do anything, that's

12   fine.  The only request I have is that you answer

13   any question that has been asked, at that time.

14   In other words, we won't take a break while there

15   is a question you haven't answered yet.  And if

16   you do so, you know, make sure that any question

17   has been answered.  So I may ask you to finish

18   answering questions before we take a break.

19           Any answers that you give are being

20   transcribed by the court reporter.  So he can't

21   capture your gestures.  If your answer is no,

22   make sure you say no.  Uh-huh or huh-uh aren't

23   going to be captured very effectively by the

24   court reporter, and shaking your head or nodding

25   your head has similar difficulties.  Do you have
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                              7

```
 1   any questions for me before I begin?

 2        A.   No, sir.

 3        Q.   Please state your name for the record.

 4        A.   Marlene Hernandez.

 5        Q.   Dr. Hernandez, where are you currently

 6   employed?

 7        A.   With Wexford Health Sources.

 8        Q.   Are you employed in a particular

 9   facility?

10        A.   I'm sorry?

11        Q.   Are you employed at a particular

12   facility?

13        A.   Not at a particular facility, no.

14        Q.   Okay.  Where do you currently work?

15        A.   I'm currently the regional medical

16   director, so I visit all 10 facilities.

17        Q.   How long have you been regional medical

18   director?

19        A.   Since January, end of January, this

20   year.

21             MR. COLGAN:  For the benefit of the

22        court reporter, can you hear my questions

23        okay?

24             THE REPORTER:  So far, so good.

25             MR. WEAVER:  I think it's better.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                               8

```
 1  BY MR. COLGAN:

 2      Q.    Good.   Before you were regional medical

 3  director what was your previous job?

 4      A.    I was the medical director at South

 5  Florida Reception Center.

 6      Q.    How long did you hold that position?

 7      A.    A little over a year.

 8      Q.    Beginning in January 2014?

 9      A.    Beginning the last week of

10  December 2013.

11      Q.    And before that, where did you work?

12      A.    Cross City Correctional Institution.

13      Q.    Who was that for?

14      A.    It was under Horizon.

15      Q.    Under Horizon.   How long did you hold

16  that position?

17      A.    How long was I at that prison?

18      Q.    Yes.

19      A.    About a year, approximately, maybe a

20  little over a year.

21      Q.    Prior to that what did you do?

22      A.    Before that, I was at Columbia

23  Correctional Institution.

24      Q.    I'm sorry.   Which correctional

25  institution?
```



Orange Legal
800-275-7991

Case 1:14-cv-20341-DPG  Document 149-1  Entered on FLSD Docket 08/15/2016  Page 10 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    9

1      A.   Columbia CI in Lake City, Florida.

2      **Q.   Were you an employee of Horizon or the**

3 **Department of Corrections?**

4      A.   Under DOC.

5      **Q.   How long did you work at Columbia?**

6      A.   Probably from, I want to say maybe

7 2011.  Summer of 2011.

8      **Q.   When were you licensed to practice**

9 **medicine in the state of Florida?**

10     A.   2010 or early 2011.  Sorry.  I got the

11 Puerto Rican license in 2010.  In 2011 I got the

12 Florida license.

13     **Q.   Where did you go to medical school?**

14     A.   Dominican Republic.

15     **Q.   And when did you graduate with a**

16 **degree?**

17     A.   Medical doctor degree.

18     **Q.   When?**

19     A.   When?  2000.  These are hard questions.

20 2003, I believe.  I don't remember.

21          MS. HUNTER:  Do you have a CV?

22          THE WITNESS:  I do.

23          MS. HUNTER:  See if we have her CV that

24     will help her.  Hold on for a second.

25          THE WITNESS:  These are hard questions.



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                          10

```
 1            (Discussion off the record.)

 2   BY MR. COLGAN:

 3       Q.    Prior to living in Florida and getting

 4   a license to practice medicine here, did you

 5   practice medicine in any other state or country

 6   or place in the United States?

 7       A.    No.

 8       Q.    Did you practice in Puerto Rico?

 9       A.    I did, but I did not practice in Puerto

10   Rico.  I got my Puerto Rican license, but I did

11   not practice there.

12       Q.    Okay.  Did you do any internship?

13       A.    Yes, sir, in Puerto Rico.

14       Q.    What hospital in Puerto Rico?

15       A.    Cayetano Coll y Toste in Arecibo,

16   Puerto Rico.

17       Q.    I'm sorry.  What city was that?

18       A.    Arecibo.

19            MS. HUNTER:  Spell it, please.

20            THE WITNESS:  A-R-E-C-I-B-O.

21   BY MR. COLGAN:

22       Q.    Okay.  Do you have any specialties?

23       A.    No, sir.

24       Q.    Was your job with the Department of

25   Corrections your first job after completing your
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                11

1    internship and residency?

2        A.   Uh-huh, yes.

3        Q.   You stated that you were the medical

4    director at South Florida Reception Center

5    between late 2013 and the beginning of this year,

6    correct?

7        A.   That's correct.

8        Q.   Were your job duties as medical site

9    director?

10       A.   To oversee all aspects of the medical

11   department.

12       Q.   You were overseeing all medical

13   operations at that particular institution?

14       A.   I'm sorry?

15       Q.   You were overseeing all medical

16   operations at that particular institution?

17       A.   Correct.

18       Q.   Are you familiar with an inmate named

19   George Horn?

20       A.   Yes, I am.

21       Q.   When did you first meet Mr. Horn?

22       A.   January 6, 2014.

23       Q.   What was the context of your first

24   meeting with him?

25       A.   When or how?



Orange Legal
800-275-7991

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                            12

1      **Q.   What was the purpose of your meeting**

2  **with him?**

3      A.   I went to see him with Dr. Reddick to

4  discuss the recommendations by an orthopedic

5  surgeon who had just seen him recently.

6      **Q.   Okay.  And what was the reason that you**

7  **went with Dr. Reddick to talk with Mr. Horn?**

8      A.   Because he was housed in the infirmary

9  for security reasons and we were rounding on all

10  our patients in the infirmary.

11     **Q.   Was this part of your regular round --**

12     A.   Correct.

13     **Q.   -- in the --**

14     A.   Yes.

15     **Q.   How often do you perform rounds in the**

16  **infirmary?**

17     A.   On a daily basis.

18     **Q.   What did you discuss with Mr. Horn, at**

19  **that time?**

20     A.   We talked about the -- we discussed the

21  recommendations from the orthopedic surgeon where

22  he did not advise surgery at that time.

23     **Q.   Do you recall which orthopedic surgeon**

24  **that was?**

25     A.   Dr. Ponce de Leon.



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    13

```
 1       Q.    Have you reviewed medical records from

 2  Dr. Ponce de Leon regarding George Horn?

 3       A.    Yes.

 4       Q.    At that time were you familiar with

 5  George Horn's visit to any other physician about

 6  pain in his right hip?

 7             MS. HUNTER:  Form.  We didn't hear the

 8       last word, pain in his...

 9  BY MR. COLGAN:

10       Q.    Right hip?

11       A.    If I was familiar with the pain in his

12  right hip?

13             MS. HUNTER:  No, that wasn't the

14       question.

15             THE WITNESS:  What was the question?

16  BY MR. COLGAN:

17       Q.    The question was, before you spoke with

18  Mr. Horn were you familiar with any other

19  treatment that he received other than Dr. Ponce

20  de Leon for pain in his right hip?

21             MS. HUNTER:  Form.

22             THE WITNESS:  I don't understand the

23       question.

24             MS. HUNTER:  Then tell him that.

25             THE WITNESS:  Yeah, I don't understand
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                                14

```
 1      what you're referring to, exactly.
 2   BY MR. COLGAN:
 3      Q.   All right.  What part of the question
 4   are you having a problem with so I can help you
 5   understand the question?
 6      A.   I don't understand if I was familiar
 7   with what?
 8      Q.   Was Dr. Ponce de Leon the only doctor
 9   who had treated George Horn for some problems
10   with his hip as far as you knew, at that time?
11      A.   When I saw him he told me that he had
12   been seen before by another physician.  But, no,
13   I was only aware of Dr. Ponce de Leon seeing him.
14   It was the most recent consult that he had done.
15      Q.   Okay.  And Dr. Ponce de Leon said that
16   he did recommend treatment, at that time,
17   correct?
18      A.   Correct.
19      Q.   So what questions did you ask Mr. Horn
20   regarding that?
21          MS. HUNTER:  Form.
22          THE WITNESS:  I did not ask him
23      questions.  The purpose of my visit there
24      was to convey and make him aware of what the
25      orthopedic surgeon had recommended, at that
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    15

```
 1       time.
 2   BY MR. COLGAN:
 3       Q.    At the time that you spoke to him were
 4   you aware of any grievances that he had?
 5       A.    Not at that moment, no.
 6       Q.    Were you aware that he was asking for
 7   hip surgery to be done?
 8       A.    I learned when I saw him that he
 9   insisted on that, despite the fact that it was
10   not advised by the most recent orthopedic surgeon
11   that had seen him.
12       Q.    Had the surgery been advised by a
13   previous orthopedic surgeon?
14           MS. HUNTER:  Form, predicate.
15   BY MR. COLGAN:
16       Q.    You can answer, if you know?
17       A.    I don't know.
18       Q.    I'm going to show you what's been
19   marked as Plaintiff's Exhibit A.
20           (Exhibit A was marked for identification
21       purposes only.)
22           MS. HUNTER:  We have it.  She's looking
23       at it.
24   BY MR. COLGAN:
25       Q.    Okay.  You are looking at, this is a
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                         16

```
 1   record that you prepared, the part that is marked
 2   with your stamp, correct?
 3       A.   Yes, sir.
 4       Q.   This reflects some restrictions that
 5   you gave Mr. Horn regarding his hip, at that
 6   time?
 7       A.   Yes, sir.
 8       Q.   Okay.  Did you discuss any other
 9   matters with him, any other matters about his hip
10   with him including any treatment with Dr. Corces?
11       A.   I did not, because I didn't document
12   that on my note.  I wrote down exactly what went
13   on in our conversation.
14       Q.   How long was the conversation in total?
15       A.   Oh, I can't recall, but usually
16   doctor's visits vary.  I want to say this was an
17   informative visit just to tell him what the
18   specialist had recommended, and that's about it,
19   and I put it down.
20       Q.   Okay.  Mr. Horn insists on having
21   surgery done on the right hip despite our
22   recommendations of not being suitable for surgery
23   at this time.  What does that mean?
24       A.   That means that when he was told or
25   informed that Dr. Ponce de Leon wrote no surgery
```



**Orange Legal**
**800-275-7991**

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    17

```
 1   is advised at the present time he did not want to

 2   hear that.  He was disappointed because he wanted

 3   the surgery done even though it was advised not

 4   to have it done at that time.

 5        Q.    Did you attempt to persuade him not to

 6   ask for the surgery to be done?

 7        A.    No, it was not my decision.  The

 8   specialist who is the orthopedic surgeon had

 9   already mentioned.  It's not my choice.  I mean,

10   I would have loved for him to have it done if it

11   was the right time.  But, you know, I can't go

12   over an orthopedic surgeon's opinion.  I was just

13   agreeing with him because he was referred to the

14   consultant for a reason, because they know more

15   than we do about this.  I was just second -- I

16   mean, I was just agreeing with his decision.

17        Q.    Were you aware of the reasons why

18   Dr. Ponce de Leon said the surgery was not

19   advisable?

20        A.    I couldn't answer that question what

21   his train of thought was when he saw the patient.

22   It could have been multiple reasons.  But the

23   plan was very straightforward.  No surgery is

24   advised at the present time.  He signed it and

25   dated it on December 12th, 2013.  December
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    18

```
 1   13th --
 2       Q.   Well, Dr. Ponce de Leon examined George
 3   Horn, correct?
 4       A.   That's correct.
 5       Q.   And are you saying that he didn't
 6   provide any reasons why he felt the surgery was
 7   not advisable?
 8       A.   Not from what I could read.
 9       Q.   Is it standard practice for doctors to
10   make notes about the reason for the medical
11   decision?
12       A.   That is entirely up to every physician.
13   Some providers like to write more than others.
14   Usually surgeons are very shorthanded and they,
15   you know, they don't give much explanations.
16       Q.   Okay.  Have you reviewed since that day
17   any medical records from George Horn's previous
18   medical treatment?
19       A.   Part of it.  I mean, not the whole
20   record, but, yes, whatever was pertinent for his
21   care, at that moment.
22       Q.   Did you review any of the records from
23   Dr. Corces?
24       A.   No, sir.
25       Q.   Are the recommendations from surgical
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                          19

```
 1  consultations usually as short as Dr. Ponce de

 2  Leon?

 3              MS. HUNTER:  Form, predicate.

 4  BY MR. COLGAN:

 5      Q.   How many surgical consultations have

 6  you reviewed since you began working in

 7  correctional healthcare?

 8      A.   Dozens of them.

 9      Q.   In those consultation reports from

10  surgeons, are they typically this short?

11              MS. HUNTER:  Form, predicate.

12  BY MR. COLGAN:

13      Q.   You can answer if you understand the

14  question.

15      A.   I mean, some of them are short.  Others

16  are extensive.  Like I said before, it's entirely

17  up to the provider.

18      Q.   Were you curious at all why Dr. Ponce

19  de Leon had made the recommendation not to have

20  surgery?

21              MS. HUNTER:  Form.

22              THE WITNESS:  I mean, it was his

23      decision.

24  BY MR. COLGAN:

25      Q.   Why is that?
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                        20

```
1        A.    Usually when we send patients to the

2   specialist we trust they're going to do the right

3   thing for the patient and we use specialists

4   because we trust them more.  So I would never go

5   against a specialist's recommendation.

6        Q.    Speaking hypothetically, if the

7   doctor's reason for not recommending surgery be

8   done was that he was not the person who had done

9   prior surgeries --

10            MR. WEAVER:  Object to the form.

11   BY MR. COLGAN:

12        Q.    -- would that be information you would

13   want to have in order to make a decision?

14            MR. WEAVER:  Form.

15            MS. HUNTER:  Form.

16            THE WITNESS:  I'm not understanding the

17        question.  It's kind of vague, or what do

18        you mean by hypothetically?

19   BY MR. COLGAN:

20        Q.    What I mean by hypothetically -- strike

21   that.

22        A.    Can you be more specific?

23        Q.    For example, if Dr. Ponce de Leon did

24   not recommend surgery be done because he wasn't

25   the surgeon that had performed previous hip
```



Orange Legal
800-275-7991

Case 1:14-cv-20341-DPG Document 149-1 Entered on FLSD Docket 08/15/2016 Page 22 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                              21

1  surgeries on George Horn, would that be

2  information that you would want to consider about

3  whether to pursue hip surgery with another

4  doctor --

5           MR. WEAVER:  Form.

6           MS. HUNTER:  Form.

7  BY MR. COLGAN:

8      Q.    -- such as the original doctor.

9      A.    Are you asking me to assume what

10 Dr. Ponce de Leon was thinking at that time, is

11 that what you're trying to do?  I don't know what

12 he was thinking at that time.

13     Q.    I'm not trying to make you do anything.

14 I'm asking you a question.  If there is something

15 about the question you don't understand, I can

16 rephrase it.  You are saying that you didn't

17 understand at that time?

18          MS. HUNTER:  No.  Object to the form.

19     Argumentative.

20          MR. COLGAN:  What is your objection to

21     form?

22          MS. HUNTER:  You are being

23     argumentative and putting words in her

24     mouth.

25          MR. COLGAN:  I'm not trying to be



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                          22

```
 1        argumentative.  I'm trying to ask the

 2        question.

 3             MS. HUNTER:  Apparently your question

 4        is argumentative.  So ask your question

 5        again, please.

 6   BY MR. COLGAN:

 7        Q.    Do you understand my question?

 8        A.    I did not.

 9        Q.    You said just now that you didn't know

10   what his reasons were for denying -- for not

11   recommending the surgery, correct?

12        A.    Correct.

13        Q.    Is there any instance in which you

14   would want to know why a surgery was not being

15   recommended?

16        A.    Sometimes yes, sometimes not, no.

17        Q.    If any doctor says, okay, I don't

18   recommend the surgery and you're not wondering

19   why, is there something that needs to change?

20             MR. WEAVER:  Object to the form.

21   BY MR. COLGAN:

22        Q.    For instance, if the surgery is not

23   recommended at this time, would you want to know

24   what criteria would have to be met in order for

25   surgery to be revisited?
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    23

1      A.   Usually on patients that have had

2  multiple surgeries and they have failed, it's

3  standard practice.  You know, more surgery is

4  obviously not the answer.  So more surgery

5  doesn't necessarily mean better.

6      **Q.   Does Mr. Horn have a hip joint in his**

7  **right hip?**

8      A.   Does he have what?  I'm sorry.

9      **Q.   Does he have a hip joint in his right**

10  **hip?**

11     A.   If he had a what?

12          MR. WEAVER:  A hip joint.

13          THE WITNESS:  A hip joint?

14  BY MR. COLGAN:

15     **Q.   Does he have a hip joint in his right**

16  **hip?**

17          MS. HUNTER:  Object to the form.

18          THE WITNESS:  I don't know.  I mean, I

19      didn't do an x-ray at that moment to see

20      what he had.

21  BY MR. COLGAN:

22     **Q.   So you didn't know what the surgical**

23  **recommendation was about, either?**

24          MS. HUNTER:  Object to the form.

25          THE WITNESS:  I know he wanted a hip



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    24

1           replaced, which involves multiple steps and

2           procedures and techniques.

3     BY MR. COLGAN:

4           **Q.    Did you know whether any of the steps**

5     **had been performed for him?**

6           A.    I know he had previous surgeries.  The

7     specifics of what took place in each surgery, I

8     don't know exactly.  I mean, I couldn't recite

9     exactly what was done in each surgery.  But I do

10    know that he had multiple interventions before.

11          **Q.    Okay, in your January 6, 2014 note, it**

12    **says that you will discuss the case with UM for**

13    **evaluation?**

14          A.    Correct.

15          **Q.    Did you discuss it with them?**

16          A.    I did.

17          **Q.    Are you there?**

18          A.    Yes, I'm here.  I said I did.

19          **Q.    Okay.  I don't know why I didn't hear**

20    **that.**

21          A.    Oh, okay.

22          **Q.    Who did you speak to?**

23          A.    The UM medical director, Dr. Smith.

24          **Q.    And what did Dr. Smith say?**

25          A.    We will follow the recommendations of



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                              25

```
 1   Dr. Ponce de Leon.  No surgery is advised at the

 2   present time.

 3       Q.   Have you ever accused George Horn of

 4   being a drug dealer?

 5       A.   No.

 6       Q.   Have you ever stated that you were not

 7   a drug dealer?

 8       A.   No.

 9       Q.   Were you involved in a decision to

10   remove George Horn from morphine?

11       A.   No, sir.

12       Q.   Were you aware at the time that you

13   came in to the department, that you came into

14   South Florida Reception Center that an order to

15   titrate George Horn from morphine had been given?

16           MR. WEAVER:  Form.

17           MS. HUNTER:  Form.

18           THE WITNESS:  An order was given when,

19       specifically?

20   BY MR. COLGAN:

21       Q.   I'm asking if you were aware of any

22   such order?

23       A.   Yes.

24       Q.   Have you reviewed the medical records?

25       A.   I have.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                           26

1      Q.    Is that order narrated in the medical

2   records that you reviewed?

3      A.    Yes.

4      Q.    Could you tell me where I would be able

5   to find that?

6      A.    Around October 2013.  It was tapered

7   down by Dr. Medina.

8      Q.    Do you know if George Horn was placed

9   on any medications in place of the morphine?

10      A.    If he was on any medication, did you

11   say?

12      Q.    I asked if you were aware of any

13   medication that was substituted for the morphine?

14      A.    Yes.

15      Q.    What medication?

16      A.    He had been on Toradol, he had been on

17   Elavil, he had been on ibuprofen, all for pain

18   management.

19      Q.    Do you know the reason why he was, why

20   his morphine was discontinued?

21      A.    He had been on it for quite some time.

22   Morphine is an addicting drug.  We, I mean, the

23   ultimate goal on morphine treatment is to taper

24   down and discontinue.  And Mr. Horn had a history

25   of drug abuse.  So substance abuse patients, it's



 1  always wiser to try and use substitute

 2  medications instead of narcotics.

 3      **Q.   Were you aware of any medical records**

 4  **which indicated that he had substance abuse**

 5  **problems?**

 6      A.   That's always part of the medical

 7  record and we have access to review their

 8  allergies and their addictions.

 9      **Q.   I'm asking if, at that time, was there**

10  **concern that he had a substance abuse problem?**

11      A.   At what time?

12          MS. HUNTER:  Object to the form.

13  BY MR. COLGAN:

14      **Q.   At the time that he was titrated from**

15  **morphine?**

16          MS. HUNTER:  Well, object to the form;

17      predicate.

18          THE WITNESS:  Usually patients who are

19      chronic pain patients tend to have an

20      addiction problem.  That's a pretty general

21      assumption.  So like I said before, the

22      ultimate goal is to try and keep the

23      patients pain free with no narcotic

24      substitutions.

25  BY MR. COLGAN:



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    28

```
 1       Q.   Do you know if that goal was achieved
 2  with George Horn?
 3       A.   It was attempted, much before I got
 4  there.
 5       Q.   Okay.  Was he still on morphine at the
 6  time that you came there?
 7       A.   He was not on morphine at the time I
 8  was there.
 9       Q.   He was not on morphine?
10       A.   No.
11       Q.   Do you know what date he received his
12  final dose?
13       A.   Not off the top of my head.  I would
14  have to refer back to the record and find it.
15       Q.   Do you know if he was off morphine at
16  any time in December 2013?
17       A.   Probably for a short period, two or
18  three days.
19       Q.   And did the medications that he was
20  placed on after he was weaned off of morphine
21  provide pain relief for him?
22       A.   He was on Elavil and ibuprofen.
23  They're both considered, and also before that, he
24  was on Toradol.  Those three drugs are used for
25  pain management.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                           29

```
 1      Q.   Do you know if they worked?

 2      A.   They work.  Of course they work.

 3      Q.   Not if they work, did they work in

 4  George Horn's case?

 5      A.   If they what?

 6      Q.   Did they work in George Horn's case?

 7      A.   The only time I saw him in the

 8  infirmary and going by the nurse's note, he was

 9  under no acute distress, he wasn't complaining,

10  he was eating, he was drinking, he was using the

11  bathroom and engaging in daily activities without

12  any facial expressions that he was in severe pain

13  or anything like that.  He was certainly not

14  crying or complaining about anything like that

15  that very first time.  And per nursing notes, I

16  mean, there is evidence that, you know, he was

17  getting pain relief with the doses he was

18  getting.

19      Q.   When you were at South Florida

20  Reception Center in December and January of 2013

21  to 2014 were you aware of any problems with a --

22  with the resale of morphine by inmates?

23      A.   I knew there was security issues

24  related to morphine dealing in the compound and

25  in F dorm.  And he was housed in the infirmary
```



Orange Legal
800-275-7991

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    30

```
 1  per security reasons.  I didn't know exactly what

 2  the reason but he was under some sort of

 3  investigation which could have been related to

 4  that or some other reason.  I'm not really sure.

 5  But he was just housed in there for some security

 6  issue.

 7        Q.   Do you know if there was a general

 8  order not to place him on morphine in South

 9  Florida Reception Center in 2013?

10        A.   No, sir.

11        Q.   There wasn't or you don't know?

12             MS. HUNTER:  Form.

13             THE WITNESS:  Say, repeat that

14        question, please.

15  BY MR. COLGAN:

16        Q.   Are you saying there wasn't or that you

17  don't know?

18        A.   An order for no morphine allowed, is

19  that what you're trying to say?

20        Q.   Yes.

21        A.   There was not such an order.

22        Q.   There was no such order?

23        A.   Huh-uh.

24             MS. HUNTER:  You have to answer --

25             THE WITNESS:  No, no, sir.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    31

```
 1  BY MR. COLGAN:

 2       Q.    Other than your visit to George Horn

 3  during rounds on January 6, did you provide any

 4  treatment directly to George Horn?

 5       A.    Face-to-face encounter, no, that was

 6  the only one.  Treatment, I must have renewed

 7  pain medication for him, yes.

 8       Q.    When you are visiting an inmate for

 9  rounds, do you visit only certain inmates or do

10  you visit all the dorms?

11       A.    We have two types of admissions.  The

12  acute ones and the chronics.  Acute ones get

13  daily rounds.  Chronic housed for security

14  inmates get weekly visits.  He was on the weekly

15  schedule.

16       Q.    Prior to rounds for weekly visit

17  schedules, do you review the medical records for

18  each inmate you're going to visit?

19       A.    Yes, sir.

20       Q.    Did you review the records of George

21  Horn prior to seeing him --

22            MS. HUNTER:  Form.

23  BY MR. COLGAN:

24       Q.    -- on January 6?

25            MS. HUNTER:  Form.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    32

```
 1          THE WITNESS:  What part of the record
 2      are you referring to, specifically?
 3  BY MR. COLGAN:
 4      Q.   Well, did you review any medical
 5  records for George Horn before you saw him on
 6  January 6?
 7      A.   Well, evidently I looked at the consult
 8  that Ponce de Leon wrote on December 12, '13,
 9  because that's what I went to talk about with
10  him.  So, yes, that was reviewed, but if you're
11  referring to the whole record, no, I do not.
12      Q.   If you review the medical records
13  before you visit an inmate, before a weekly
14  visit, what type of medical records do you look
15  at?
16      A.   The pertinent stuff to that visit on
17  that day, the most relevant labs, the most recent
18  labs, notes, follow-ups and consults.
19      Q.   Do you know if George Horn was ever
20  caught cheeking morphine?
21      A.   I could not confirm that.
22      Q.   Does that mean you don't know?
23      A.   That means I don't know.
24          MR. COLGAN:  Okay.  I don't have any
25      further questions.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    33

```
 1                    CROSS-EXAMINATION

 2   BY MR. WEAVER:

 3        Q.   I have a few.

 4             Did you know a Dr. Seyed Hosseini at

 5   SFRC?

 6        A.   I've heard of him, yes.

 7        Q.   Did you have any personal contact with

 8   him?

 9        A.   Never worked with him.

10        Q.   He left SFRC at some point?

11        A.   Much before I got there, yes, he did.

12        Q.   Okay.  Do you know what his position

13   was at SFRC?

14        A.   He used to be the medical director.

15        Q.   Do you know when he left?

16        A.   I do not know, but it was before I came

17   in.

18        Q.   Do you know who replaced him?

19        A.   I do not know.

20        Q.   At any point has anyone from the

21   Florida Department of Corrections ever instructed

22   you to deny necessary medical care for inmates in

23   order to save money?

24        A.   No, sir.

25        Q.   Or to deny necessary medical care to
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    34

```
 1   inmates to increase profits?

 2        A.   No, sir.

 3        Q.   Are you aware of any DOC policy or

 4   practice of denying medical care to save money?

 5        A.   No, sir.

 6        Q.   Or increase profits?

 7        A.   No, sir.

 8        Q.   Similar question.  How about Wexford?

 9   Has anyone from Wexford ever instructed you to

10   deny necessary medical care to an inmate to save

11   money or increase profits?

12        A.   No, sir.

13        Q.   And are you aware of any general policy

14   that Wexford has to deny necessary medical care

15   to inmates to save money?

16        A.   No, sir.

17        Q.   Or to increase profits?

18        A.   No, sir.

19        Q.   And, similarly, Dr. Hosseini, I know

20   you said you never communicated with him

21   directly.  Are you aware of anything that he ever

22   did to deny an inmate necessary medical care to

23   save money or increase profits?

24        A.   No, sir.

25             MR. WEAVER:  I don't think I have
```



**Orange Legal**
**800-275-7991**

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    35

```
 1      anything further.

 2                  CROSS-EXAMINATION

 3   BY MS. HUNTER:

 4      Q.    I have a few follow-up.  Dr. Hernandez,

 5   how long have you been a physician?

 6      A.    Graduated in 2003.

 7      Q.    So we're now in 2015.  So that is 12

 8   years, at least, right?

 9      A.    Correct.

10      Q.    And the entire time that you have been

11   practicing as a physician you have chosen to

12   dedicate your time to the provision of medical

13   care to incarcerated patients, correct?

14      A.    That's correct.

15      Q.    When you came to work at SFRC and were

16   employed by Wexford at SFRC, did you at any point

17   in time with regard to George Horn's care make a

18   decision to deny him medical care because of some

19   profit that you would get from that?

20      A.    No, ma'am.

21      Q.    Did you at any point in time make

22   decision to deny George Horn medical care with

23   the knowledge that denial of medical care would

24   cause him serious harm?

25      A.    No, ma'am.
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                    36

```
1       Q.    Would you do that as a physician?

2       A.    I would not.

3       Q.    If you felt that Mr. Horn needed some

4    type of medical care, and that medical care was

5    necessary to prevent serious medical harm, would

6    you do your best to get that for him?

7       A.    I would go above and beyond to make

8    sure the patient gets what is medically

9    necessary.

10      Q.    There have been some suggestions in

11   this case that there was a conspiracy to deny

12   Mr. Horn medical care for his hip.  Are you aware

13   of any such conspiracy?

14      A.    I am not.

15            MR. COLGAN:  Object to the form of the

16      question.

17   BY MS. HUNTER:

18      Q.    Are you aware of any conversations that

19   have occurred between medical providers and

20   Wexford in George Horn's case in which the

21   decision was made to deny him hip surgery?

22      A.    No, ma'am.

23      Q.    That there was some ulterior motive to

24   cause Mr. Horn pain or discomfort to deny him

25   this hip surgery?
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                              37

```
 1        A.    No, ma'am.

 2        Q.    Are you aware of any conversation that

 3   occurred with Wexford or any of the people that

 4   worked for Wexford where a decision was made to

 5   deny him the ability to have hip surgery to save

 6   money?

 7        A.    No.

 8        Q.    Did you at all profit personally in any

 9   way, shape or form by the denial of any medical

10   care to George Horn?

11        A.    Not at all.

12        Q.    Did you have any kind of deal with

13   Wexford that your ability to cut costs in the

14   care of patients would give you a bonus or an

15   increase in your salary?

16        A.    No, ma'am.

17        Q.    In your experience at working at SFRC

18   and dealing with the care for George Horn, did

19   you ever encounter a situation where the

20   utilization management system of Wexford was used

21   to deny medical care that was necessary to

22   patients?

23        A.    No.

24        Q.    And just to make sure the record is

25   clear, you had no involvement whatsoever in the
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    38

```
 1   decision making regarding the titration of the

 2   morphine that was being provided to Mr. Horn at

 3   some point in time in his incarceration, is that

 4   correct?

 5        A.   That is correct.

 6             MS. HUNTER:  That's all I have.

 7             MR. COLGAN:  At this time we're not

 8        going to order and reserve the right to

 9        order.

10             MS. HUNTER:  Okay.  We'll read, and I

11        will order it.

12             THE REPORTER:  You want me to

13        transcribe it?

14             MS. HUNTER:  Yes, sir, and I will pay

15        for it.

16             THE REPORTER:  Copy?

17             MR. WEAVER:  We'll probably order a

18        copy, yes.

19             THE REPORTER:  Mr. Colgan, do you want

20        a copy?

21             MR. COLGAN:  Not at this time.

22        (The deposition was concluded at 3:18

23        p.m.)

24

25
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    39

```
 1              CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA

 4   COUNTY OF PALM BEACH

 5          I, EDWARD F. KIDD, RPR, LCR, Shorthand

 6   Reporter and Notary Public, State of Florida,

 7   certify that MARLENE HERNANDEZ, M.D., personally

 8   appeared before me and was duly sworn.

 9          Dated this 22nd day of July, 2015.

10

11          Edward F. Kidd

12          _____
            EDWARD F. KIDD, RPR, LCR
13          Notary Public, State of Florida
            My Commission:  FF028201
14          Expires 6/19/17

15

16

17

18

19

20

21

22

23

24

25
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                                40

```
 1                    CERTIFICATE OF REPORTER

 2

 3   STATE OF FLORIDA

 4   COUNTY OF PALM BEACH

 5          I, EDWARD F. KIDD, RPR, LCR, Shorthand

 6   Reporter and Notary Public, State of Florida, do

 7   hereby certify that I was authorized to and did

 8   stenographically report the deposition of MARLENE

 9   HERNANDEZ, M.D.; that a review of the transcript

10   was requested; and the foregoing transcript,

11   pages 4 through page   , is a true and accurate

12   record of my stenographic notes.

13       I FURTHER CERTIFY that I am not a relative,

14   employee, attorney, or counsel of any of the

15   parties, nor am I a relative or employee of any

16   of the parties' attorney or counsel connected

17   with the action, nor am I financially interested

18   in the action.

19       Dated this 22nd day of July, 2015.

20

21          Edward F. Kidd
            _____

22          EDWARD F. KIDD, RPR, LCR
            Notary Public, State of Florida
23

24

25
```



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                          41

```
 1                   READING AND SIGNING

 2      I, MARLENE HERNANDEZ, M.D., have read the
    transcript in the case of HORN VS. CREWS, ET AL
 3  and I find:

 4  (MARK ONE)

 5  (  ) Under penalty of perjury, I declare the
    transcript is true, correct and completely
 6  accurate.

 7  (  ) Under penalty of perjury, I declare the
    transcript is true, correct and accurate, except
 8  as noted below, and citing page and line and
    reason for the correction.

 9

10                    CORRECTIONS

11  Page - Line - Correction:

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23
                        _____
24  _____
          DATE                    MARLENE HERNANDEZ,
25  M.D.
```



**Orange Legal**
**800-275-7991**

Case 1:14-cv-20341-DPG  Document 149-1  Entered on FLSD Docket 08/15/2016  Page 43 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.                                                    42

JULY 25, 2015

MARLENE HERNANDEZ, M.D.
c/o M. KATHERINE HUNTER, ESQUIRE
OF:      CHIMPOULIS, HUNTER & LYNN, P.A.
         150 South Pine Island Road
         Suite 510
         Plantation, Florida 33324

In Re:    7/15/15 deposition of MARLENE
HERNANDEZ, M.D.  HORN VS. CREWS, ET AL

Dear Dr. Hernandez:

This letter is to advise that the transcript for
the above-referenced deposition has been
completed and is available for review.  Please
contact our office at (800) 275-7991 to make
arrangements to read and sign, or sign below to
waive review of this transcript.

It is suggested that the review of this
transcript be completed within 30 days of your
receipt of this letter, as considered reasonable
under Federal Rules*; however, there is no
Florida Statute to this regard.

The original of this transcript has been
forwarded to the ordering party and your errata,
once received, will be forwarded to all ordering
parties for inclusion in the transcript.

Sincerely,

Edward F. Kidd, RPR. LCR
Orange Legal

cc:      Shane Weaver

Waiver:

I, MARLENE HERNANDEZ, M.D., hereby waive the
reading & signing of my deposition transcript.

_____

MARLENE HERNANDEZ, M.D.
Date

*Federal Civil Procedure Rule 30(e)/Florida Civil
Procedure Rule 1.310(e)



**Orange Legal**
**800-275-7991**

Case 1:14-cv-20341-DPG   Document 149-1   Entered on FLSD Docket 08/15/2016   Page 44 of 48

GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.

Index: 10..department

**1**

**10** 7:16

**12** 32:8 35:7

**12th** 17:25

**13** 32:8

**13th** 18:1

**2**

**2000** 9:19

**2003** 9:20 35:6

**2010** 9:10,11

**2011** 9:7,10,11

**2013** 8:10 11:5 17:25 26:6 28:16 29:20 30:9

**2014** 8:8 11:22 24:11 29:21

**2015** 35:7

**3**

**3:18** 38:22

**6**

**6** 11:22 24:11 31:3,24 32:6

**A**

**A-r-e-c-i-b-o** 10:20

**ability** 37:5,13

**abuse** 26:25 27:4,10

**access** 27:7

**accused** 25:3

**achieved** 28:1

**activities** 29:11

**acute** 29:9 31:12

**addicting** 26:22

**addiction** 27:20

**addictions** 27:8

**admissions** 31:11

**advisable** 17:19 18:7

**advise** 12:22

**advised** 15:10,12 17:1,3,24 25:1

**afternoon** 5:15

**agreeing** 17:13,16

**allergies** 27:8

**allowed** 30:18

**answering** 6:18

**answers** 5:23 6:19

**Apparently** 22:3

**approximately** 8:19

**Arecibo** 10:15,18

**argumentative** 21:19,23 22:1,4

**aspects** 11:10

**assume** 6:8 21:9

**assumption** 27:21

**attempt** 17:5

**attempted** 28:3

**attorney** 5:16 6:1,2

**aware** 14:13,24 15:4,6 17:17 25:12, 21 26:12 27:3 29:21 34:3,13,21 36:12,18 37:2

**B**

**back** 28:14

**basic** 5:21

**basis** 12:17

**bathroom** 29:11

**began** 19:6

**begin** 7:1

**beginning** 8:8,9 11:5

**benefit** 7:21

**bonus** 37:14

**break** 6:10,14,18

**C**

**called** 5:11

**capture** 6:21

**captured** 6:23

**care** 18:21 33:22,25 34:4,10,14,22 35:13, 17,18,22,23 36:4,12 37:10,14,18,21

**case** 5:17 24:12 29:4, 6 36:11,20

**caught** 32:20

**Cayetano** 10:15

**Center** 8:5 11:4 25:14 29:20 30:9

**change** 22:19

**cheeking** 32:20

**choice** 17:9

**chosen** 35:11

**chronic** 27:19 31:13

**chronics** 31:12

**CI** 9:1

**city** 8:12 9:1 10:17

**clear** 37:25

**Colgan** 5:14,16 7:21 8:1 10:2,21 13:9,16 14:2 15:2,15,24 19:4,12,24 20:11,19 21:7,20,25 22:6,21 23:14,21 24:3 25:20 27:13,25 30:15 31:1, 23 32:3,24 36:15 38:7,19,21

**Coll** 10:15

**Columbia** 8:22 9:1, 5

**communicated**

34:20

**complaining** 29:9, 14

**completing** 10:25

**complies** 5:3

**compound** 29:24

**concern** 27:10

**concluded** 38:22

**confirm** 32:21

**considered** 28:23

**conspiracy** 36:11,13

**consult** 14:14 32:7

**consultant** 17:14

**consultation** 19:9

**consultations** 19:1, 5

**consults** 32:18

**contact** 33:7

**context** 11:23

**conversation** 16:13, 14 37:2

**conversations** 36:18

**convey** 14:24

**copy** 38:16,18,20

**Corces** 16:10 18:23

**correct** 11:6,7,17 12:12 14:17,18 16:2 18:3,4 22:11,12 24:14 35:9,13,14 38:4,5

**correctional** 8:12, 23,24 19:7

**Corrections** 9:3 10:25 33:21

**costs** 37:13

**country** 10:5

**court** 5:22 6:20,24 7:22

**criteria** 22:24

**Cross** 8:12

**CROSS-EXAMINATION** 33:1 35:2

**crying** 29:14

**curious** 19:18

**cut** 37:13

**CV** 9:21,23

**D**

**daily** 12:17 29:11 31:13

**date** 28:11

**dated** 17:25

**day** 18:16 32:17

**days** 28:18

**de** 12:25 13:2,20 14:8,13,15 16:25 17:18 18:2 19:1,19 20:23 21:10 25:1 32:8

**deal** 37:12

**dealer** 25:4,7

**dealing** 29:24 37:18

**December** 8:10 17:25 28:16 29:20 32:8

**decision** 17:7,16 18:11 19:23 20:13 25:9 35:18,22 36:21 37:4 38:1

**dedicate** 35:12

**defendant** 5:18

**degree** 9:16,17

**denial** 35:23 37:9

**deny** 33:22,25 34:10, 14,22 35:18,22 36:11,21,24 37:5,21

**denying** 22:10 34:4

**department** 9:3 10:24 11:11 25:13 33:21



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.

Index: deposition..kind

**deposition** 5:19 38:22

**differences** 5:25

**difficulties** 6:25

**DIRECT** 5:13

**directly** 31:4 34:21

**director** 7:16,18 8:3, 4 11:4,9 24:23 33:14

**disappointed** 17:2

**discomfort** 36:24

**discontinue** 26:24

**discontinued** 26:20

**discuss** 12:4,18 16:8 24:12,15

**discussed** 12:20

**discussion** 10:1

**distress** 29:9

**DOC** 9:4 34:3

**doctor** 9:17 14:8 21:4,8 22:17

**doctor's** 16:16 20:7

**doctors** 18:9

**document** 16:11

**Dominican** 9:14

**dorm** 29:25

**dorms** 31:10

**dose** 28:12

**doses** 29:17

**Dozens** 19:8

**drinking** 29:10

**drug** 25:4,7 26:22,25

**drugs** 28:24

**duly** 5:12

**duties** 11:8

---

**E**

**early** 9:10

**eating** 29:10

**effectively** 6:23

**Elavil** 26:17 28:22

**employed** 7:6,8,11 35:16

**employee** 9:2

**encounter** 31:5 37:19

**end** 7:19

**engaging** 29:11

**entire** 35:10

**evaluation** 24:13

**evidence** 29:16

**evidently** 32:7

**EXAMINATION** 5:13

**examined** 18:2

**exhibit** 15:19,20

**experience** 37:17

**explain** 5:21 6:6

**explanations** 18:15

**expressions** 29:12

**extensive** 19:16

---

**F**

**Face-to-face** 31:5

**facial** 29:12

**facilities** 7:16

**facility** 7:9,12,13

**fact** 15:9

**failed** 23:2

**familiar** 11:18 13:4, 11,18 14:6

**felt** 18:6 36:3

**final** 28:12

**find** 26:5 28:14

**fine** 6:12

**finish** 6:17

**Florida** 8:5 9:1,9,12 10:3 11:4 25:14

29:19 30:9 33:21

**follow** 24:25

**follow-up** 35:4

**follow-ups** 32:18

**form** 13:7,21 14:21 15:14 19:3,11,21 20:10,14,15 21:5,6, 18,21 22:20 23:17, 24 25:16,17 27:12, 16 30:12 31:22,25 36:15 37:9

**free** 27:23

---

**G**

**gave** 16:5

**general** 27:20 30:7 34:13

**George** 5:17 11:19 13:2,5 14:9 18:2,17 21:1 25:3,10,15 26:8 28:2 29:4,6 31:2,4, 20 32:5,19 35:17,22 36:20 37:10,18

**gestures** 6:21

**give** 5:5 6:19 18:15 37:14

**goal** 26:23 27:22 28:1

**God** 5:7

**good** 5:15 7:24 8:2

**graduate** 9:15

**Graduated** 35:6

**grievances** 15:4

---

**H**

**hand** 5:2

**hard** 9:19,25

**harm** 35:24 36:5

**head** 6:24,25 28:13

**Health** 7:7

**healthcare** 19:7

**hear** 7:22 13:7 17:2 24:19

**heard** 33:6

**Hernandez** 5:10 7:4,5 35:4

**hip** 13:6,10,12,20 14:10 15:7 16:5,9,21 20:25 21:3 23:6,7,9, 10,12,13,15,16,25 36:12,21,25 37:5

**history** 26:24

**hold** 8:6,15 9:24

**Horizon** 8:14,15 9:2

**Horn** 5:17 11:19,21 12:7,18 13:2,18 14:9,19 16:5,20 18:3 21:1 23:6 25:3,10,15 26:8,24 28:2 31:2,4, 21 32:5,19 35:22 36:3,12,24 37:10,18 38:2

**Horn's** 13:5 18:17 29:4,6 35:17 36:20

**hospital** 10:14

**Hosseini** 33:4 34:19

**housed** 12:8 29:25 30:5 31:13

**huh-uh** 6:22 30:23

**HUNTER** 9:21,23 10:19 13:7,13,21,24 14:21 15:14,22 19:3, 11,21 20:15 21:6,18, 22 22:3 23:17,24 25:17 27:12,16 30:12,24 31:22,25 35:3 36:17 38:6,10, 14

**hypothetically** 20:6,18,20

---

**I**

**ibuprofen** 26:17 28:22

**identification** 15:20

**incarcerated** 35:13

**incarceration** 38:3

**including** 16:10

**increase** 34:1,6,11, 17,23 37:15

**infirmary** 12:8,10, 16 29:8,25

**information** 20:12 21:2

**informative** 16:17

**informed** 16:25

**inmate** 11:18 31:8, 18 32:13 34:10,22

**inmates** 29:22 31:9, 14 33:22 34:1,15

**insisted** 15:9

**insists** 16:20

**instance** 22:13,22

**institution** 8:12,23, 25 11:13,16

**instructed** 6:2 33:21 34:9

**internship** 10:12 11:1

**interventions** 24:10

**investigation** 30:3

**involved** 25:9

**involvement** 37:25

**involves** 24:1

**issue** 30:6

**issues** 29:23

---

**J**

**January** 7:19 8:8 11:22 24:11 29:20 31:3,24 32:6

**job** 8:3 10:24,25 11:8

**joint** 23:6,9,12,13,15

---

**K**

**kind** 20:17 37:12



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.

Index: knew..reasons

**knew** 14:10 29:23

**knowledge** 35:23

---

**L**

**labs** 32:17,18

**Lake** 9:1

**late** 11:5

**learned** 15:8

**left** 33:10,15

**Leon** 12:25 13:2,20 14:8,13,15 16:25 17:18 18:2 19:2,19 20:23 21:10 25:1 32:8

**license** 9:11,12 10:4, 10

**licensed** 9:8

**living** 10:3

**long** 7:17 8:6,15,17 9:5 16:14 35:5

**looked** 32:7

**loved** 17:10

---

**M**

**M.D.** 5:10

**made** 19:19 36:21 37:4

**make** 6:16,22 14:24 18:10 20:13 21:13 35:17,21 36:7 37:24

**making** 38:1

**management** 26:18 28:25 37:20

**marked** 15:19,20 16:1

**Marlene** 5:10 7:4

**matters** 16:9

**means** 16:24 32:23

**medical** 7:15,17 8:2, 4 9:13,17 11:3,8,10, 12,15 13:1 18:10,17, 18 24:23 25:24 26:1

27:3,6 31:17 32:4, 12,14 33:14,22,25 34:4,10,14,22 35:12, 18,22,23 36:4,5,12, 19 37:9,21

**medically** 36:8

**medication** 26:10, 13,15 31:7

**medications** 26:9 27:2 28:19

**medicine** 9:9 10:4,5

**Medina** 26:7

**meet** 11:21

**meeting** 11:24 12:1

**mentioned** 17:9

**met** 22:24

**Mike** 5:15

**moment** 15:5 18:21 23:19

**money** 33:23 34:4, 11,15,23 37:6

**morphine** 25:10,15 26:9,13,20,22,23 27:15 28:5,7,9,15,20 29:22,24 30:8,18 32:20 38:2

**motive** 36:23

**mouth** 21:24

**multiple** 17:22 23:2 24:1,10

---

**N**

**named** 5:18 11:18

**narcotic** 27:23

**narcotics** 27:2

**narrated** 26:1

**necessarily** 23:5

**needed** 36:3

**nodding** 6:24

**note** 16:12 24:11 29:8

**notes** 18:10 29:15 32:18

**nurse's** 29:8

**nursing** 29:15

---

**O**

**oath** 5:23

**object** 20:10 21:18 22:20 23:17,24 27:12,16 36:15

**objection** 21:20

**objections** 6:1,4

**occurred** 36:19 37:3

**October** 26:6

**operations** 11:13,16

**opinion** 17:12

**order** 20:13 22:24 25:14,18,22 26:1 30:8,18,21,22 33:23 38:8,9,11,17

**original** 21:8

**orthopedic** 12:4,21, 23 14:25 15:10,13 17:8,12

**oversee** 11:10

**overseeing** 11:12,15

---

**P**

**p.m.** 38:23

**pain** 13:6,8,11,20 26:17 27:19,23 28:21,25 29:12,17 31:7 36:24

**part** 12:11 14:3 16:1 18:19 27:6 32:1

**patient** 17:21 20:3 36:8

**patients** 12:10 20:1 23:1 26:25 27:18,19, 23 35:13 37:14,22

**pay** 38:14

**people** 37:3

**perform** 12:15

**performed** 20:25 24:5

**period** 28:17

**person** 20:8

**personal** 33:7

**personally** 37:8

**persuade** 17:5

**pertinent** 18:20 32:16

**physician** 13:5 14:12 18:12 35:5,11 36:1

**place** 10:6 24:7 26:9 30:8

**plaintiff** 5:17

**Plaintiff's** 15:19

**plan** 17:23

**point** 33:10,20 35:16,21 38:3

**policy** 34:3,13

**Ponce** 12:25 13:2,19 14:8,13,15 16:25 17:18 18:2 19:1,18 20:23 21:10 25:1 32:8

**position** 8:6,16 33:12

**practice** 9:8 10:4,5, 8,9,11 18:9 23:3 34:4

**practicing** 35:11

**predicate** 15:14 19:3,11 27:17

**prepared** 16:1

**present** 17:1,24 25:2

**pretty** 27:20

**prevent** 36:5

**previous** 8:3 15:13 18:17 20:25 24:6

**prior** 8:21 10:3 20:9 31:16,21

**prison** 8:17

**problem** 14:4 27:10, 20

**problems** 14:9 27:5 29:21

**procedures** 24:2

**profit** 35:19 37:8

**profits** 34:1,6,11,17, 23

**provide** 18:6 28:21 31:3

**provided** 38:2

**provider** 19:17

**providers** 18:13 36:19

**provision** 35:12

**Puerto** 9:11 10:8,9, 10,13,14,16

**purpose** 12:1 14:23

**purposes** 15:21

**pursue** 21:3

**put** 5:24 16:19

**putting** 21:23

---

**Q**

**question** 6:3,4,5,8, 13,15,16 13:14,15, 17,23 14:3,5 17:20 19:14 20:17 21:14, 15 22:2,3,4,7 30:14 34:8 36:16

**questions** 5:24 6:18 7:1,22 9:19,25 14:19,23 32:25

---

**R**

**raise** 5:1

**read** 18:8 38:10

**reason** 12:6 17:14 18:10 20:7 26:19 30:2,4

**reasons** 12:9 17:17,



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.

Index: recall..type

22 18:6 22:10 30:1

**recall** 12:23 16:15

**received** 13:19 28:11

**recent** 14:14 15:10 32:17

**recently** 12:5

**Reception** 8:5 11:4 25:14 29:20 30:9

**recite** 24:8

**recommend** 14:16 20:24 22:18

**recommendation** 19:19 20:5 23:23

**recommendations** 12:4,21 16:22 18:25 24:25

**recommended** 14:25 16:18 22:15, 23

**recommending** 20:7 22:11

**record** 7:3 10:1 16:1 18:20 27:7 28:14 32:1,11 37:24

**records** 13:1 18:17, 22 25:24 26:2 27:3 31:17,20 32:5,12,14

**Reddick** 12:3,7

**refer** 28:14

**referred** 17:13

**referring** 14:1 32:2, 11

**reflects** 16:4

**regard** 35:17

**regional** 7:15,17 8:2

**regular** 12:11

**related** 29:24 30:3

**relevant** 32:17

**relief** 28:21 29:17

**remember** 9:20

**remove** 25:10

**renewed** 31:6

**repeat** 30:13

**rephrase** 6:6 21:16

**replaced** 24:1 33:18

**reporter** 5:1,4 6:20, 24 7:22,24 38:12,16, 19

**reports** 19:9

**representing** 5:16

**Republic** 9:14

**request** 6:12

**resale** 29:22

**reserve** 38:8

**residency** 11:1

**restrictions** 16:4

**review** 18:22 27:7 31:17,20 32:4,12

**reviewed** 13:1 18:16 19:6 25:24 26:2 32:10

**revisited** 22:25

**Rican** 9:11 10:10

**Rico** 10:8,10,13,14, 16

**round** 12:11

**rounding** 12:9

**rounds** 12:15 31:3,9, 13,16

**rules** 5:21

---

**S**

**salary** 37:15

**save** 33:23 34:4,10, 15,23 37:5

**schedule** 31:15

**schedules** 31:17

**school** 9:13

**security** 12:9 29:23 30:1,5 31:13

**send** 20:1

**severe** 29:12

**Seyed** 33:4

**SFRC** 33:5,10,13 35:15,16 37:17

**shaking** 6:24

**shape** 37:9

**short** 19:1,10,15 28:17

**shorthanded** 18:14

**show** 15:18

**signed** 17:24

**similar** 5:22 6:25 34:8

**similarly** 34:19

**sir** 5:20 7:2 10:13,23 16:3,7 18:24 25:11 30:10,25 31:19 33:24 34:2,5,7,12, 16,18,24 38:14

**site** 11:8

**situation** 37:19

**Smith** 24:23,24

**solemnly** 5:4

**sort** 6:4 30:2

**Sources** 7:7

**South** 8:4 11:4 25:14 29:19 30:8

**speak** 24:22

**Speaking** 20:6

**specialist** 16:18 17:8 20:2

**specialist's** 20:5

**specialists** 20:3

**specialties** 10:22

**specific** 20:22

**specifically** 6:2 25:19 32:2

**specifics** 24:7

**Spell** 10:19

**spoke** 13:17 15:3

**stamp** 16:2

**standard** 18:9 23:3

**state** 7:3 9:9 10:5

**stated** 11:3 25:6

**States** 10:6

**steps** 24:1,4

**straightforward** 17:23

**stretch** 6:11

**strike** 20:20

**stuff** 32:16

**substance** 26:25 27:4,10

**substitute** 27:1

**substituted** 26:13

**substitutions** 27:24

**suggestions** 36:10

**suitable** 16:22

**Summer** 9:7

**surgeon** 12:5,21,23 14:25 15:10,13 17:8 20:25

**surgeon's** 17:12

**surgeons** 18:14 19:10

**surgeries** 20:9 21:1 23:2 24:6

**surgery** 12:22 15:7, 12 16:21,22,25 17:3, 6,18,23 18:6 19:20 20:7,24 21:3 22:11, 14,18,22,25 23:3,4 24:7,9 25:1 36:21,25 37:5

**surgical** 18:25 19:5 23:22

**swear** 5:4

**sworn** 5:12

**system** 37:20

---

**T**

**talk** 12:7 32:9

**talked** 12:20

**taper** 26:23

**tapered** 26:6

**techniques** 24:2

**tend** 27:19

**testified** 5:12

**testifying** 5:22

**testimony** 5:5

**thing** 20:3

**thinking** 21:10,12

**thought** 17:21

**time** 6:11,13 12:19, 22 13:4 14:10,16 15:1,3 16:6,23 17:1, 4,11,24 21:10,12,17 22:23 25:2,12 26:21 27:9,11,14 28:6,7,16 29:7,15 35:10,12,17, 21 38:3,7,21

**titrate** 25:15

**titrated** 27:14

**titration** 38:1

**told** 14:11 16:24

**top** 28:13

**Toradol** 26:16 28:24

**Toste** 10:15

**total** 16:14

**train** 17:21

**transcribe** 38:13

**transcribed** 6:20

**treated** 14:9

**treatment** 13:19 14:16 16:10 18:18 26:23 31:4,6

**trust** 20:2,4

**truth** 5:6,7

**type** 32:14 36:4



GEORGE HORN vs. MICHAEL CREWS
MARLENE HERNANDEZ, M.D.

Index: types..years

**types** 31:11

**typically** 19:10

_____

**U**

_____

**Uh-huh** 6:22 11:2

**ulterior** 36:23

**ultimate** 26:23
27:22

**understand** 6:5,7
13:22,25 14:5,6
19:13 21:15,17 22:7

**understanding**
20:16

**understood** 6:9

**United** 10:6

**utilization** 37:20

_____

**V**

_____

**vague** 20:17

**vary** 16:16

**visit** 7:16 13:5 14:23
16:17 31:2,9,10,16,
18 32:13,14,16

**visiting** 31:8

**visits** 16:16 31:14

_____

**W**

_____

**wanted** 17:2 23:25

**water** 6:11

**weaned** 28:20

**WEAVER** 7:25
20:10,14 21:5 22:20
23:12 25:16 33:2
34:25 38:17

**week** 8:9

**weekly** 31:14,16
32:13

**Wexford** 7:7 34:8,9,
14 35:16 36:20 37:3,
4,13,20

**whatsoever** 37:25

**wiser** 27:1

**wondering** 22:18

**word** 13:8

**words** 6:14 21:23

**work** 7:14 8:11 9:5
29:2,3,6 35:15

**worked** 29:1 33:9
37:4

**working** 19:6 37:17

**write** 18:13

**wrote** 16:12,25 32:8

_____

**X**

_____

**x-ray** 23:19

_____

**Y**

_____

**year** 7:20 8:7,19,20
11:5

**years** 35:8



**Orange Legal**
**800-275-7991**