AGREEMENT #A3362

# MEMORANDUM OF AGREEMENT BETWEEN

# THE FLORIDA DEPARTMENT OF CORRECTIONS

# AND

# LARKIN COMMUNITY HOSPITAL

This Memorandum of Agreement ("Agreement") is between the Florida Department of Corrections ("Department") and Larkin Community Hospital ("Participating Entity" or "the hospital"), which are the parties hereto.

Whereas, the Department is responsible for the inmates and for the operation of, and supervisory and protective care, custody and control of, all buildings, grounds, property and matters connected with the correctional system in accordance with Section 945.04, Florida Statutes;

Whereas, the Department has contracted with Wexford Health Sources (hereinafter referred to as "Wexford") for the provision of comprehensive health care services at nine institutions in South Florida, pursuant to Contract #C2758; and

Whereas, the Department and Wexford have agreed to establish a secure hospital unit for Department of Corrections' inmates at Larkin Community Hospital;

THEREFORE, the parties agree to the following:

I.  **TERM OF AGREEMENT**

   This Memorandum of Agreement shall begin on the date of last signature by the parties and shall be co-terminus with the December 21, 2012 - December 20, 2017 Contract, #C2758, between the Department and Wexford Health Sources, Inc., unless terminated earlier under the provisions of this Memorandum of Agreement.

   This Agreement may be renewed for an additional five (5) year period, after the initial Agreement term, upon the same terms and conditions contained herein, and upon agreement of both parties. Exercise of the renewal option shall be conditioned, at a minimum, on the Participating Entity's performance of this Agreement and subject to the continuation of services provided under Contract #C2758. The Department, if it desires to exercise its renewal option, will provide written notice to the participating Entity no later than thirty (30) days prior to the Agreement expiration date. The renewal term shall be considered separate and shall require the exercise of a renewal amendment that shall be signed by both parties.

II. **SCOPE OF AGREEMENT**

   The Department and the Participating Entity agree to carry out their respective duties and responsibilities outlined below, subject to controlling law, policy(ies) and/or procedures, and in consideration of the mutual interests and understandings expressed herein.

   A.  Department Responsibilities

       The Department will perform the following duties in support of this Agreement:



**AGREEMENT #A3362**

1. The Department will provide, at its expense and judgment, a sufficient number of Correctional Officers to supervise those inmates receiving services from the Participating Entity.

2. The Department shall ensure that any inmate receiving treatment pursuant to this Agreement is appropriately restrained, in accordance with the Department's procedures, at the time treatment is rendered and that such restraints shall not be removed during treatment unless the inmate's health or safety is immediately threatened or removal or repositioning of the restraints is needed to insure provision of clinically indicated treatment or diagnostic evaluation. Metallic restraints will be utilized unless the treatment or procedure dictates the use of non-metallic restraints. Correctional staff shall have sole discretion to determine whether restraints are to be removed or repositioned.

B. <u>Participating Entity Responsibilities</u>

The Participating Entity shall perform the following duties in support of this Agreement:

1. The Participating Entity shall provide designated secure hospital space for Department of Corrections" inmates who are referred to the Participating Entity through Wexford. The secure space shall not be altered during the term of this agreement without the written permission of the Department.

2. Conduct and Safety Requirements

   a. By execution of this Agreement, the Participating Entity acknowledges and accepts, for itself and any of its agents, that all or some of the services to be provided under this Agreement shall be provided with direct and/or indirect contact with the inmate population and that there are inherent risks associated therewith. The Participating Entity shall follow all Department security guidelines and shall maintain the secure hospital unit in accordance with Department security requirements.

   b. In addition, the Participating Entity shall ensure that all staff adhere to the following requirements:

      1) The Participating Entity's staff shall not display favoritism to, or preferential treatment of, one inmate or group of inmates over another.

      2) The Participating Entity's staff shall not deal with any inmate except in a relationship that supports services under this Agreement. Specifically, staff members must never accept for themselves or any member of their family, any personal (tangible or intangible) gift, favor, or service from an inmate or an inmate's family or close associate, no matter how trivial the gift or service may seem. The Participating Entity shall report to the Agreement Manager any violations or attempted violation of these restrictions. In addition, no staff member shall give any gifts, favors or services to inmates, their family or close associates.

      3) The Participating Entity's staff shall not enter into any business relationship with inmates or their families (example – selling, buying or trading personal property), or personally employ them in any capacity.

AGREEMENT #A3362

4) The Participating Entity's staff shall not have outside contact (other than incidental contact) with an inmate being served or their family or close associates, except for those activities that are to be rendered under the Agreement.

5) The Participating Entity's staff shall not engage in any conduct which is criminal in nature or which would bring discredit upon the Participating Entity or the State. In providing services pursuant to this Agreement, the Participating Entity shall ensure that its employees avoid both misconduct and the appearance of misconduct.

6) Any violation or attempted violation of the restrictions referred to in this section regarding employee conduct shall be reported by phone and in writing to the Agreement Manager or their designee, including proposed action to be taken by the Participating Entity. Any failure to report a violation or take appropriate disciplinary action against the offending party or parties shall subject the Participating Entity to appropriate action, up to and including termination of this Agreement.

7) The Participating Entity shall report any incident described above, or requiring investigation by the Participating Entity, in writing, to the Agreement Manager or their designee within twenty four (24) hours, of the Participating Entity's knowledge of the incident.

## III. FINANCIAL OBLIGATIONS OF THE PARTIES

The Department and the Participating Entity acknowledge that this Agreement is not intended to create financial obligations between the parties. However, in the event that costs are incurred as a result of either or both of the parties performing their duties or responsibilities under this Agreement, each party agrees to be responsible for their own costs.

It is expressly agreed that the Department is not responsible for the costs associated with providing health care services to Department of Corrections' inmates as a consequence of this agreement. Wexford Health Sources, Inc., is solely responsible for all costs associated with health care services provided by the hospital to Department of Corrections' inmates, for which it will compensate Larkin Community Hospital directly.

## IV. AGREEMENT MANAGEMENT

A. Department's Agreement Administrator

The Agreement Administrator for the Department is responsible for maintaining the official Agreement file, processing any amendments or termination of the Agreement, and for maintaining records of all formal correspondence between the Department and the Participating Entity regarding administration of the Agreement.

The title, address and telephone number of the Department's Agreement Administrator is:

Operations Manager, Contract Administration
Bureau of Contract Management and Monitoring
Florida Department of Corrections
501 South Calhoun Street
Tallahassee, Florida 32399-2500

AGREEMENT #A3362

    Telephone: (850) 717-3681
    Fax: (850) 488-7189

B. <u>Agreement Managers</u>

The parties have identified the following individuals as Agreement Managers. These individuals are responsible for enforcing performance of the Agreement terms and conditions and shall serve as liaison/agency contact regarding issues arising out of this Agreement.

**DEPARTMENT OF CORRECTIONS**
Tom Reimers
Director of Health Services Administration and Programs
Office of Health Services
501 South Calhoun Street
Tallahassee, Florida 32399
Telephone: (850)717-3266
Fax: (850) 921-9757
Email: Reimers.thomas@mail.dc.state.fl.us

**LARKIN COMMUNITY HOSPITAL**
Sandy Sosa-Guerrero, CEO
5996 SW 70th Street. 5th Floor.
South Miami, Florida 33143
Main: (305) 284-7700
Fax: (305) 284-7545
Email: ssosa@larkinhospital.com

V. **REVIEW AND MODIFICATION**

A. Upon request of either party, both parties will review this Agreement in order to determine whether its terms and conditions are still appropriate. The parties agree to renegotiate terms and conditions hereof if it is mutually determined that significant changes in this Agreement are necessary. There are no obligations to agree by either party.

B. Modifications to the provisions of this Agreement, with the exception of Section IV., Agreement Management, shall be valid only through execution of a formal written amendment to the Agreement.

VI. **TERMINATION**

This Agreement may be terminated at any time upon the mutual consent of both parties or unilaterally by either party upon no less than thirty (30) calendar days' notice. Notice shall be delivered by certified mail (return receipt requested), express mail or other method whereby a receipt of delivery may be obtained.

In addition, this Agreement may be terminated with 24 hours notice by the Department for any failure of the Participating Entity to comply with the terms of this Agreement or any applicable Florida law.

VII. **OTHER CONDITIONS**

A. <u>Indemnification</u>

The Participating Entity shall be liable, and agrees to be liable for, and shall indemnify, defend, and hold the Department, its employees, agents, officers, heirs, and assignees

AGREEMENT #A3362

harmless from any and all claims, suits, judgments, or damages including court costs and attorney's fees arising out of intentional acts, negligence, or omissions by the Participating Entity or its employees or agents, in the course of the operations of this Agreement, including any claims or actions brought under Title 42 USC §1983, the Civil Rights Act.

B. Confidentiality

The Participating Entity shall ensure all staff assigned to this Agreement maintains confidentiality with reference to individual participants receiving services in accordance with applicable local, state, and federal laws, rules and regulations. The Department and the Participating Entity agree that all information and records obtained in the course of providing services under this Agreement shall be subject to confidentiality and disclosure provisions of applicable federal and state statutes and regulations adopted pursuant thereto.

The Participating Entity agrees to keep all Department personnel information (i.e., DC staff telephone numbers, addresses, etc.) strictly confidential and shall not disclose said information to any person, unless released in writing by said Department.

C. Disputes

Any dispute concerning performance of the terms of this Agreement shall be resolved informally by the Agreement Managers. Any dispute that cannot be resolved informally shall be reduced to writing and delivered to the Department's Assistant Secretary of Health Services. The Assistant Secretary of Health Services shall decide the dispute, reduce the decision to writing, and deliver a copy to the parties, the Agreement Managers and the Agreement Administrator.

D. Data Sharing

The Department and the Participating Entity acknowledge their separate obligations to store and disseminate data in compliance with the requirements of Public Records Law, Chapter 119, Florida Statutes, and with other applicable statutes that constitute express exceptions to the requirements of Section 119.07(1), Florida Statutes, by making certain categories of records confidential, exempt from disclosure, or accessible as prescribed by statute. The Participating Entity acknowledges that the data exchanged between them has been provided for official purposes and that public access to such data is limited and prescribed by statute. The Participating Entity therefore agrees, consistent with public records law, to refer third parties requesting delivery of information to the originating party. Participating Entity further agrees to disseminate data only in compliance with confidentiality restrictions and in recognition of the exemptions from disclosure provided by law and to provide advance copies of documents involving the other party's data for review to determine if there has been an inadvertent disclosure of confidential information as described herein prior to publication.

E. Notices

All notices required or permitted by this Agreement shall be given in writing and by hand-delivery or email to the respective addresses of the parties as set forth in Section IV above. All notices by hand-delivery shall be deemed received on the date of delivery and all notices by email shall be deemed received when they are transmitted and not returned as undelivered or undeliverable. Either party may change the names, addresses, or telephone numbers set forth in Section IV above by written notice given to the other party as provided above.

MOA Template General - Rev 01-17-2013

AGREEMENT #A3362

F. <u>Health Insurance Portability and Accountability Act</u>

The Participating Entity shall comply with the Health Insurance Portability and Accountability Act of 1996 (42 U. S. C. 1320d-8), and all applicable regulations promulgated thereunder. Such compliance shall be required by the execution of **Attachment A**, Business Associate Agreement.

G. <u>Sovereign Immunity</u>

The Department is a state agency as defined in Section 768.28, Florida Statutes, and is responsible for the acts and omissions of its agents or employees only to the extent permitted by law. Nothing herein is intended to serve as a waiver of sovereign immunity by the Department. Further, nothing herein shall be construed as consent by the Department to be sued by third parties in any matter arising out of this Agreement or any other contract.

**AUTHORIZATION FOR SIGNATURE**

IN WITNESS THEREOF, the parties hereto have caused this Agreement to be executed by their undersigned officials as duly authorized.

**LARKIN COMMUNITY HOSPITAL**

SIGNED BY: _[signature]_

NAME: Jaudy Sosa Guerrero

TITLE: CEO

DATE: 10/9/2013

**DEPARTMENT OF CORRECTIONS**

| | | |
|---|---|---|
| SIGNED BY: _[signature]_ | SIGNED BY: _[signature]_ | Approved as to form and legality, subject to execution: |
| NAME: Michael D. Crews | NAME: Jennifer A. Parker | |
| TITLE: Secretary<br>Department of Corrections | TITLE: General Counsel<br>Department of Corrections | |
| DATE: 25 OCT 13 | DATE: 10/10/13 | |

MOA Template General - Rev 01-17-2013

AGREEMENT #A3362
Attachment A

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement supplements and is made a part of this Agreement between the Florida Department of Corrections ("Department") and Larkin Community Hospital ("Participating Entity/Contractor"), (individually, a "Party" and collectively referred to as "Parties").

Whereas, the Department creates or maintains, or has authorized the Contractor to receive, create, or maintain certain Protected Health Information ("PHI,") as that term is defined in 45 C.F.R. §164.501 and that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended. ("HIPAA");

Whereas, the Department is a "Covered Entity" as that term is defined in the HIPAA implementing regulations, 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E, the Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule") and the Security Standards for the Protection of Electronic Protected Health Information ("Security Rule");

Whereas, the Contractor may have access to Protected Health Information in fulfilling its responsibilities under its contract with the Department;

Whereas, the Contractor is considered to be a "Business Associate" of a Covered Entity as defined in the Privacy Rule;

Whereas, pursuant to the Privacy Rule, all Business Associates of Covered Entities must agree in writing to certain mandatory provisions regarding the use and disclosure of PHI; and

Whereas, the purpose of this Agreement is to comply with the requirements of the Privacy Rule, including, but not limited to, the Business Associate contract requirements of 45 C.F.R. §164.504(e).

Whereas, in regards to Electronic Protected Health Information as defined in 45 C.F.R. § 160.103, the purpose of this Agreement is to comply with the requirements of the Security Rule, including, but not limited to, the Business Associate contract requirements of 45 C.F.R. §164.314(a).

Now, therefore, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

1. **Definitions**

   Unless otherwise provided in this Agreement, any and all capitalized terms have the same meanings as set forth in the HIPAA Privacy Rule, HIPAA Security Rule or the HITECH Act. Contractor acknowledges and agrees that all Protected Health Information that is created or received by the Department and disclosed or made available in any form, including paper record, oral communication, audio recording, and electronic display by the Department or its operating units to Contractor or is created or received by Contractor on the Department's behalf shall be subject to this Agreement.

2. **Confidentiality Requirements**

   A. Contractor agrees to use and disclose Protected Health Information that is disclosed to it by the Department solely for meeting its obligations under its agreements with the Department, in accordance with the terms of this agreement, the Department's established policies rules, procedures and requirements, or as required by law, rule or regulation.

   B. In addition to any other uses and/or disclosures permitted or authorized by this Agreement or required by law, Contractor may use and disclose Protected Health Information as follows:

      (1) if necessary for the proper management and administration of the Contractor and to carry out the legal responsibilities of the Contractor, provided that any such disclosure is required by law or that Contractor obtains reasonable assurances from the person to whom the information is disclosed that it will be held confidentially and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and the person notifies Contractor of any instances of which it is aware in which the confidentiality of the information has been breached;

<b>AGREEMENT #A3362<br>Attachment A</b>

(2) for data aggregation services, only if to be provided by Contractor for the health care operations of the Department pursuant to any and all agreements between the Parties. For purposes of this Agreement, data aggregation services means the combining of protected health information by Contractor with the protected health information received by Contractor in its capacity as a Contractor of another covered entity, to permit data analyses that relate to the health care operations of the respective covered entities.

(3) Contractor may use and disclose protected health information that Contractor obtains or creates only if such disclosure is in compliance with every applicable requirement of Section 164.504(e) of the Privacy Rule relating to Contractor contracts. The additional requirements of Subtitle D of the HITECH Act that relate to privacy and that are made applicable to the Department as a covered entity shall also be applicable to Contractor and are incorporated herein by reference.

C. Contractor will implement appropriate safeguards to prevent use or disclosure of Protected Health Information other than as permitted in this Agreement. Further, Contractor shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of Electronic Protected Health Information that it creates, receives, maintains, or transmits on behalf of the Department. The Secretary of Health and Human Services and the Department shall have the right to audit Contractor's records and practices related to use and disclosure of Protected Health Information to ensure the Department's compliance with the terms of the HIPAA Privacy Rule and/or the HIPAA Security Rule.

Further, Sections 164.308 (administrative safeguards). 164.310 (physical safeguards), 164.312 (technical safeguards), and 164.316 (policies and procedures and documentation requirements) of the Security Rule shall apply to the Contractor in the same manner that such sections apply to the Department as a covered entity. The additional requirements of the HITECH Act that relate to security and that are made applicable to covered entities shall be applicable to Contractor and are hereby incorporated by reference into this BA Agreement.

D. Contractor shall report to Department any use or disclosure of Protected Health Information, which is not in compliance with the terms of this Agreement as well as any Security incident of which it becomes aware. Contractor agrees to notify the Department, and include a copy of any complaint related to use, disclosure, or requests of Protected Health Information that the Contractor receives directly and use best efforts to assist the Department in investigating and resolving such complaints. In addition, Contractor agrees to mitigate, to the extent practicable, any harmful effect that is known to Contractor of a use or disclosure of Protected Health Information by Contractor in violation of the requirements of this Agreement.

Such report shall notify the Department of:

1) any Use or Disclosure of protected health information (including Security Incidents) not permitted by this Agreement or in writing by the Department;

2) any Security Incident;

3) any Breach, as defined by the HITECH Act; or

4) any other breach of a security system, or like system, as may be defined under applicable State law (Collectively a "Breach").

Contractor will without unreasonable delay, but no later than seventy-two (72) hours after discovery of a Breach, send the above report to the Department.

Such report shall identify each individual whose protected health information has been, or is reasonably believed to have been, accessed, acquired, or disclosed during any Breach pursuant to 42 U.S.C.A. § 17932(b). Such report will:

AGREEMENT #A3362
Attachment A

    1)   Identify the nature of the non-permitted or prohibited access, use, or disclosure, including the nature of the Breach and the date of discovery of the Breach.

    2)   Identify the protected health information accessed, used or disclosed, and provide an exact copy or replication of that protected health information.

    3)   Identify who or what caused the Breach and who accessed, used, or received the protected health information.

    4)   Identify what has been or will be done to mitigate the effects of the Breach; and

    5)   Provide any other information, including further written reports, as the Department may request.

E.   In accordance with Section 164.504(e)(1)(ii) of the Privacy Rule, each party agrees that if it knows of a pattern of activity or practice of the other party that constitutes a material breach of or violation of the other party's obligations under the BA Agreement, the non-breaching party will take reasonable steps to cure the breach or end the violation, and if such steps are unsuccessful, terminate the contract or arrangement if feasible. If termination is not feasible, the party will report the problem to the Secretary of Health and Human Services (federal government).

F.   Contractor will ensure that its agents, including a subcontractor, to whom it provides Protected Health Information received from, or created by Contractor on behalf of the Department, agree to the same restrictions and conditions that apply to Contractor, and apply reasonable and appropriate safeguards to protect such information. Contractor agrees to designate an appropriate individual (by title or name) to ensure the obligations of this agreement are met and to respond to issues and requests related to Protected Health Information. In addition, Contractor agrees to take other reasonable steps to ensure that its employees' actions or omissions do not cause Contractor to breach the terms of this Agreement.

G.   Contractor shall secure all protected health information by a technology standard that renders protected health information unusable, unreadable, or indecipherable to unauthorized individuals and is developed or endorsed by a standards developing organization that is accredited by the American National Standards Institute and is consistent with guidance issued by the Secretary of Health and Human Services specifying the technologies and methodologies that render protected health information unusable, unreadable, or indecipherable to unauthorized individuals, including the use of standards developed under Section 3002(b)(2)(B)(vi) of the Public Health Service Act, pursuant to the HITECH Act, 42 U.S.C.A. § 300jj-11, unless the Department agrees in writing that this requirement is infeasible with respect to particular data. These security and protection standards shall also apply to any of Contractor's agents and subcontractors.

H.   Contractor agrees to make available Protected Health Information so that the Department may comply with individual rights to access in accordance with Section 164.524 of the HIPAA Privacy Rule. Contractor agrees to make Protected Health Information available for amendment and incorporate any amendments to Protected Health Information in accordance with the requirements of Section 164.526 of the HIPAA Privacy Rule. In addition, Contractor agrees to record disclosures and such other information necessary, and make such information available, for purposes of the Department providing an accounting of disclosures, as required by Section 164.528 of the HIPAA Privacy Rule.

I.   The Contractor agrees, when requesting Protected Health Information to fulfill its contractual obligations or on the Department's behalf, and when using and disclosing Protected Health Information as permitted in this contract, that the Contractor will request, use, or disclose only the minimum necessary in order to accomplish the intended purpose.

3. **Obligations of Department**

A.   The Department will make available to the Business Associate the notice of privacy practices (applicable to offenders under supervision, not to inmates) that the Department produces in accordance with 45 C.F.R. 164.520, as well as any material changes to such notice.

AGREEMENT #A3362  
Attachment A

B. The Department shall provide Business Associate with any changes in, or revocation of, permission by an Individual to use or disclose Protected Health Information, if such changes affect Business Associate's permitted or required uses and disclosures.

C. The Department shall notify Business Associate of any restriction to the use or disclosure of Protected Health Information that impacts the business associate's use or disclosure and that the Department has agreed to in accordance with 45 C.F.R. 164.522 and the HITECH Act.

4. **Termination**

   A. Termination for Breach - The Department may terminate this Agreement if the Department determines that Contractor has breached a material term of this Agreement. Alternatively, the Department may choose to provide Contractor with notice of the existence of an alleged material breach and afford Contractor an opportunity to cure the alleged material breach. In the event Contractor fails to cure the breach to the satisfaction of the Department, the Department may immediately thereafter terminate this Agreement.

   B. Automatic Termination - This Agreement will automatically terminate upon the termination or expiration of the original contract between the Department and the Contractor.

   C. Effect of Termination

      (1) Termination of this agreement will result in termination of the associated contract between the Department and the Contractor.

      (2) Upon termination of this Agreement or the contract, Contractor will return or destroy all PHI received from the Department or created or received by Contractor on behalf of the Department that Contractor still maintains and retain no copies of such PHI; provided that if such return or destruction is not feasible, Contractor will extend the protections of this Agreement to the PHI and limit further uses and disclosure to those purposes that make the return or destruction of the information infeasible.

5. **Amendment** - Both parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary to comply with the requirements of the Privacy Rule, the HIPAA Security Rule, and the HITECH Act.

6. **Interpretation** - Any ambiguity in this Agreement shall be resolved to permit the Department to comply with the HIPAA Privacy Rule and/or the HIPAA Security Rule.

7. **Indemnification** – The Contractor shall be liable for and agrees to be liable for, and shall indemnify, defend, and hold harmless the Department, its employees, agents, officers, and assigns from any and all claims, suits, judgments, or damages including court costs and attorneys' fees arising out or in connection with any non-permitted or prohibited Use or Disclosure of PHI or other breach of this Agreement, whether intentional, negligent or by omission, by Contractor, or any sub-contractor of Contractor, or agent, person or entity under the control or direction of Contractor. This indemnification by Contractor includes any claims brought under Title 42 USC §1983, the Civil Rights Act.

8. **Miscellaneous** - Parties to this Agreement do not intend to create any rights in any third parties. The obligations of Contractor under this Section shall survive the expiration, termination, or cancellation of this Agreement, or any and all other contracts between the parties, and shall continue to bind Contractor, its agents, employees, contractors, successors, and assigns as set forth herein for any PHI that is not returned to the Department or destroyed.