## AFFIDAVIT OF CARL KELDIE, MD

1. My name is Carl Keldie, MD, and I am over the age of 18 and fully competent to testify as to the matters herein.

2. I am a medical doctor specializing in correctional health care and emergency medicine with active licensure in Florida, North Carolina, Michigan, and Pennsylvania. I am Board Certified in Emergency Medicine and qualified by education, training, and experience to evaluate the provision of medical care and treatment in correctional facilities. Having served as the Chief Medical Officer for both Prison Health Services, Inc. and Corizon Correctional Healthcare, I am familiar with the conditions of confinement and associated healthcare challenges, as well as the processes and procedures governing the provision of healthcare in correctional facilities similar to those where George Horn was incarcerated.

3. I have been engaged by the law firm of Chimpoulis, Hunter & Lynn, P.A. to review pertinent medical records to determine whether Marlene Hernandez, MD, David Reddick, MD, and Wexford Health Sources, Inc. provided a constitutionally adequate level of care to George Horn during his incarceration at South Florida Reception Center from March 2013 until his transfer to Columbia Correctional Institution in January 2014. To that end, I have reviewed George Horn's Complaint and George Horn's medical records.

4. Based upon my review of the aforementioned, as well as my background, training, learning, and experience in the field of Correctional Healthcare, it is my opinion within a reasonable degree of medical probability that Dr. Hernandez, Dr. Reddick, and Wexford Health Sources, Inc. provided George Horn with a constitutional level of care that comported with both community and correctional healthcare parameters.

5. In his Complaint, George Horn alleges that Dr. Hernandez removed him from Morphine abruptly on or about January 7, 2014 and refused to provide any alternative treatment. George Horn proceeds to contend that Dr. Hernandez discontinued his Morphine and all other pain management treatments under the pretext that another inmate had been caught trafficking in prescription pain medication.



EXHIBIT "N"

6. On the contrary, the records reviewed from the Florida Department of Corrections unequivocally demonstrate that Dr. Hernandez did not discontinue George Horn's Morphine; that George Horn's last Morphine prescription was ordered by Dr. David Reddick and *expired* on December 21, 2013; and even after the *expiration* of his Morphine prescription, George Horn was still administered alternative pain management medication, namely, ibuprofen and Elavil.

7. In his Complaint, George Horn likewise alleges that Dr. Reddick knew that he had a serious medical need for pain management and that Dr. Arturo Corces had recommended the hip reimplantation procedure sought by George Horn. The Complaint further asserts that Dr. Reddick used the Utilization Management's Collegial Review process to refer George Horn for a reevaluation with Dr. Jose Ponce de Leon for the sole purpose of controlling costs.

8. On the contrary, the records reviewed from the Florida Department of Corrections and Dr. Corces unequivocally demonstrate that Dr. Corces never recommended a hip reimplantation procedure. In fact, Dr. Corces cautioned George Horn that he was at an enhanced risk for recurrent infection, and potentially, amputation and/or hip disarticulation.

9. Lastly, in his Complaint, George Horn alleges that Wexford denied him a hip reimplantation procedure and had an incentive to deny medical care whenever feasible, regardless of medical necessity, in order to maximize profits under its contract with the Florida Department of Corrections.

10. On the contrary, the records reviewed from the Florida Department of Corrections unequivocally demonstrate that Wexford, by and through its employed medical providers, noted and followed the recommendations of the consulting orthopedic surgeons. Additionally, the records indicate appropriate and significant expenditure of resources to provide care to George Horn. Lastly, the theory that withholding essential care maximizes profits is patently false. For example, Morphine has minimal cost implications but likewise has safety and side-effect concerns as well as waning efficacy. Put simply, efficiency and cost management are established principles in the provision of quality healthcare and do not interfere with a respective patient's ability to obtain medically adequate and necessary care and treatment.

11. My opinion has never been disqualified in any Court.

12. I certify that I have not been found guilty of fraud or perjury in any jurisdiction.

13. Under penalties of perjury, I certify that I have read the foregoing and the facts stated in it are true.

    FURTHER AFFIANT SAYETH NOT.

*[signature]*
CARL KELDIE, MD