UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-cv-20341-GAYLES/MCALILEY

GEORGE HORN,

    Plaintiff,

v.

JULIE L. JONES, et al.

    Defendants.
_____/

## AFFIDAVIT OF DONNA GRAHAM, R.N.

STATE OF FLORIDA    )
COUNTY OF UNION    )

1. My name is Donna Graham. I am a registered nurse and Government Operations Consultant III for the Florida Department of Corrections ("FDC"). I work at Reception and Medical Center in Lake Butler. I am responsible for reviewing all alternative treatment plans ("ATP") recommended by FDC's contracted healthcare providers, including Wexford, through their utilization management ("UM").

2. I have been a nurse since 1994. I started my employment with FDC in September 1998. FDC has its own UM, and I first began working in it in 2004 as a UM nurse. I became UM director in 2008. I have been in my current position October 2013.

3. FDC facilities cannot offer full-scale medical services as a hospital would. They have limited ability to provide certain diagnostics, treatments, devices and procedures. If an inmate needs medical care beyond what the facility provides, the facility's chief health officer (or their designee) submits a request to the facility healthcare provider's UM for outside care. For example, an inmate may need to see a specialist or undergo surgery.

1

4. If UM does not accept a facility doctor's request, it ordinarily recommends an ATP instead. There are several reasons why different treatment may be recommended through an ATP.

5. ATPs frequently recommend a course of more conservative treatment within the facility before proceeding to outside treatment. For example, an ATP may recommend a course of anti-inflammatory medications to help with back pain rather than immediately sending the inmate to an outside orthopedist. Or an ATP may recommend a diagnostic work-up within the facility rather than outside. If the facility is ultimately unable to treat or diagnose the problem, then UM may approve a request for outside treatment.

6. This principle of managed care is the same as used by private HMOs. In fact, FDC's contracted providers use the same evidence-based care guidelines as HMOs do.

7. The principle behind managed care, whether in prison or free society, is that there are certain steps or levels of treatment a patient proceeds through: a patient would not go from the first step to the highest with nothing in-between unless there were some type of emergency or other obvious reason why intermediate levels of treatment were inappropriate.

8. However, an ATP does not automatically mean that a provider is recommending a different type of treatment. An ATP can just be a request for more information from the facility doctor before making a decision, which is often the case in the ATPs I review.

9. On very rare occasions, an ATP may also deny a request. In those situations, the ATP would state the reason for denial rather than recommending another form of treatment. A request may be denied when the request is not medically necessary and does not require treatment, such as for a benign or cosmetic condition.

10. Each week, I receive batches of ATPs from the providers. On average, that may be 15-20 ATPs from Wexford. For Corizon and now Centurion, which are responsible for more facilities, that number may be 15-30 ATPs per day.

11. I review each and every one of these ATPs. Based on my medical background, training, and experience with the providers' contracts and the UM guidelines, I determine if the ATP is appropriate. If it raises any questions or concerns, I forward it to the Director of Medical Services in the Office of Health Services for further review.

12. The current Director is Dr. Timothy Whalen; before him it was Dr. Long Do until his retirement earlier this year. If, after Dr. Whalen's review, there is still a dispute with the provider over the ATP, the Office of Health Service's recommendation prevails.

13. During all the time that I have been reviewing ATPs, I have not observed any systemic pattern of Wexford recommending ATPs of necessary medical care in order to cut costs or increase profits. If I had, or if I even had a suspicion of this, it is certainly something I would have reported to the Director. I have no reason to protect Wexford.

14. I am also the records custodian for FDC's UM records before privatization. I have reviewed the records in George Horn's UM file, which are attached hereto as Exhibit A.

15. I hereby certify that the documents attached as Exhibit A. are true and accurate copies of the documents contained in the original UM file for George Horn.

16. Affiant further sayeth naught.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 10, 2016.

*Donna Graham*
DONNA GRAHAM